WILLIAM H. YOUNG, as Administrator, etc., Respondent, *v.* GEORGE YOUNG et al., Appellants.

To establish a valid gift, a delivery of the subject of the gift to the donee, or to some person for him, so as to divest the possession and title of the donor, must be shown.

To make a valid gift *in præsenti* of an instrument securing the payment of money, reserving to the donor the accruing interest during life, without a written transfer or declaration of trust, there must be an absolute delivery of the security to the donee, vesting the entire legal title and possession in him, on his undertaking to account to the donor for the interest.

If the donor retains the instrument under his own control, though merely for the purpose of collecting the interest, there is an absence of the complete delivery essential to the validity of a gift.

So, also, such a gift cannot be made by creating a joint possession of donor and donee, even if it be with the intention that each shall have an interest.

In March, 1874, Y. placed in two envelopes certain coupon bonds; he indorsed upon each of the envelopes a memorandum, signed by him, to the effect that a specified number of the bonds therein contained belonged to his son W., and the residue to his son J., but that the interest to become due thereon was " owned and reserved " by him during his life, and that at his death " they belong absolutely and entirely to them and their heirs." Y. exhibited the packages, with the indorsements thereon, to the wives of the two sons, with statements to the effect that what he had thus done was in pursuance of a settled purpose, and that he believed he had made a valid disposition of the bonds. Y., at the time, lived at the house of W., where there was a safe, which Y. formerly owned, but which, it was said, he had given to a son of W., reserving a right to use it, and which he did use as a deposit for his valuable papers. W. also used a compartment in the safe as a receptacle for his papers, but he rarely went to it, Y. being in the habit of depositing and removing the papers when W. requested it.    After exhibiting the packages, Y. replaced them in the safe.    After this the packages were generally kept, not in the pigeon-holes used by Y., where the bonds had been kept previously, but in the compartment where the papers of W. were kept, and there they were found after the death of Y., which occurred in November, 1875.    As installments of interest became due Y. cut off the coupons, W. sometimes assisting him.    W. never exercised any ownership over the bonds as against his father, and they were at all times under the control of the latter, up to his death.    J , the other donee, never had any control over the bonds, or access to the safe.    At one time Y., when solicited for a loan, said he supposed he might, with the boys' consent, take some of their bonds; and he told another person that what he had left he had given to W. and J.    Y. had, before making the indorsements, given J. $1,000, and he afterwards took a $1,000 bond from one of the packages, which was stated in the indorsement as belonging to J., and gave it to a third person.    *Held*, that the facts did not show a valid executed gift, as the donees at no time during the life of Y. had exclusive possession of the bonds, or the legal right to such possession.

*Grangiac* v. *Arden* (10 J. R , 293); *Trow* v. *Shannon* (78 N. Y., 446), distinguished.

Also, *held*, that the transaction could not be sustained as a declaration of trust.

Aalso *held*, that as the writing, so made and signed by Y., was without consideration, equity could not interfere and effectuate the intent by compelling the execution of a declaration of trust, or charging the bonds with a trust in favor of the equitable owners.

Statement of case.

Equity will not interpose to perfect a defective gift or voluntary settlement made without consideration, nor can it convert an imperfect gift into a declaration of trust merely on account of that imperfection.

To create a trust, where the donor retains the property, the acts or words relied upon must be unequivocal, implying that he holds the property as trustee for the benefit of another.

*Morgan* v. *Malleson* (L. R. [10 Eq. Cas.], 475 ; *Richardson* v. *Richardson* L. R. [3 Eq. Cas.], 686, stated as overruled.

*Martin* v. *Funk* (75 N. Y., 134), distinguished.

As to whether a remainder in a chattel may be created and given, by the donor's carving out a life estate for himself, and transferring the remainder without the intervention of a trustee, *quære*.

(Argued January 19, 1880 ; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, reversing a decree of the surrogate of the county of Sullivan upon the accounting of plaintiff, as administrator of the estate of Joseph Young, deceased.

Upon such accounting the administrator claimed that certain United States and town coupon bonds belonged to himself and to his brother, John N. Young. The surrogate disallowed the claim, and charged him with said bonds.

These bonds, upon the death of the intestate, were found in two packages inclosed in envelopes, upon which were indorsed memoranda signed by him, one dated March 14, the other March 14, 1874, each of which described the bonds inclosed by numbers, and stated that certain of them belonged to William H. Young, that the others belonged to John N. Young. Then followed a statement of the indorsements, of which the following is a copy : "But the inst. to become due thereon is owned and reserved by me for so long as I shall live, at my death they belong absolutely and entirely to them and their heirs." The other was similar.

The circumstances under which the memoranda were made, and the further material facts, are set forth in the opinion.

*Hezekiah Watkins*, for appellants. The reservation of interest in the bonds entitled the intestate to the possession

of them, and therefore there could be no gift. (2 Blackst. Com., 441; *Hunter* v. *Hunter*, 19 Barb., 631; *Grangiac* v. *Arden*, 10 J. R., 292; *Schofield* v. *Whitelegge*, 49 N. Y., 259; *Wheeler* v. *Allen*, 59 id., 37; 19 Barb., 473; 7 Hill, 126; 16 Wend., 344; 2 J. R., 380; 1 Waite, 877; 3 Hill, 576; 8 Barb., 213, 3 Pick., 255; 2 Kent Com., 354; *Allen* v. *Scurry*, 1 Yerger, 36; 2 Schouler on Pers. Prop., 118, 121; *Vass* v. *Hicks*, 3 Murphy [N. C.], 494; *Sutton's Exr.* v. *Hallowell*, 2 Devereux, 186; *Lance, Admr.* v. *Lance*, 5 Jones L. Rep., 413; *Pitts* v. *Mangum*, 2 Bailey [So. Ca.], 588, 589; *Howell* v. *Howell*, 7 Ired., 491.) The indorsements make no present surrender by Joseph Young of his beneficial estate, and hence created no trust in him. (Smith's Manual of Eq., 120; 1 Story's Eq., § 964; Adam's Eq., 27; 2 Spence Eq. J., 875; 14 Wend., 275; 2 Edw., 554; 1 R. S., 728, § 60; *Moore* v. *Darton*, 4 DeG. & S. Ch., 517; *Tierney* v. *Wood*, 19 Beav., 330; S. C., 23 L. J. Ch., 895; Lewin on Trusts, 72; Hill on Trustees, 60; *Richards* v. *Delbridge*, L. R. [18 Eq. Cas., 11], 1874; *Moore* v. *Moore*, 43 L. J. Ch. App. [N. S.], 617, 623; *Heartley* v. *Nicholson*, 44 id., 277, 279; *Milroy* v. *Lord*, 4 DeG. F. & J., 264; *Trimmer* v. *Danby*, 25 L. J. Ch., 424; *Lane* v. *Ewing*, 31 Mo., 75, 87; *Richards* v. *Delbridge*, L. R. [18 Eq.], 11; Hill on Trustees, 87.) The transaction was testamentary, and hence did not create any declaration of trust. (*Warriner* v. *Rogers*, 16 Eq., 340; *Willocks* v. *Harrington*, 5 Irish Ch., 38–44; *Hughes* v. *Stubbs*, 1 Hare, 476; *Smith* v. *Ward*, 16 Sim., 56; *Vandenburg* v. *Palmer*, 24 Kay & J., 216–218; *Moore* v. *Ulster Banking Co.*, 12 Irish Law Times, 5; *Mitchell* v. *Smith*, 10 id., 801; *Shurtliff, Exr.* v. *Francis*, 118 Mass., 154; *In re Diez*, 50 N. Y., 88; Perry on Trusts, 63, § 92.) No estate in remainder was created. (Statutes, 1 R. S., 723, §§ 8, 11, 13; *Green* v. *Edwards*, 1 Cro. Eliz., 216; 1 Co., 155; Lewis on Perpetuities, 92–99; Williams on Pers. Prop., 123, 124; 8 Coke, 85; 10 id., 46; Cro. James, 459; *Wright* v. *Cartwright*, 1 Burrow, 282–284; 1 Schouler on Pers. Prop., 161–181 [166]; Williams on

Pers. Prop., 239; *Vernon's Adm'r* v. *Imabnity*, 2 Brevard [So. Car.], 411–414; *Dowd* v. *Montgomery*, 2 No. Car., 100; *Graham* v. *Graham*, 2 Hawks, 323, 1823; 2 Ired. Eq., 324; *Foscue* v. *Foscue*, 2 Hawks, 638, 1825; *Morrow* v. *Williams*, 3 Dev. Law, 263; *Citing Gilbert* v. *Murdock*, 2 Hay, 182; *Nichols* v. *Cartwright*, 2 Mur., 137; *Hunt* v. *Davis*, 3 Dev. & Bat., 43, 1839; *Betty* v. *Moore*, 1 Dana [Ky.], 237; 2 Kent, 550, note b.; La. Civil Code, art. 1520; *Tihlman* v. *Mosely*, 14 La. Ann., 710; *Banks, Adm'r* v. *Marksbury*, 3 Litt. [Ky.], 275; *Williamson* v. *Mason*, 23 Ala., 508; *Price* v. *Price*, 5 id., 578; *Robison* v. *Schly*, 6 Ga., 515; *Kirk-patrick* v. *Davidson*, 2 id., 297; *Maxwell* v. *Harrison*, id., 61, 67; *Fitzhugh* v. *Anderson*, 2 Henry & Munf. [Va.].) The indorsements upon the bonds did not amount to deeds. (3 Wash on Real Prop., 239, 263, 378.)

*Homer A. Nelson*, for respondent. There was a sufficient delivery of the bonds by the donor to the donees to pass the title of them. (1 Herr's Appeal [5 Watts & Sergt.], 494; *Grangiac* v. *Arden*, 10 J. R., 302; *Whiting* v. *Barrett*, 7 Lans., 106; *Stevens* v. *Stevens*, 2 Hun, 471; *Cooper* v. *Burr*, 45 Barb., 9; *Hunter* v. *Hunter*, 19 id., 631; *Allen* v. *Cowan*, 23 N. Y., 502; *Goodrich* v. *Walker*, 1 Johns. Cas., 253; *Jackson* v. *Bodle*, 20 J. R., 185; *Taylor* v. *Taylor*, 5 Hun, 115; *Grymes* v. *Hone*, 49 N. Y., 17; *Jones* v. *Blake*, 2 Hill Chy. [S. C.], 629, 631; *Reid* v. *Colcock*, 1 Nott & McC., 592, 603; *Brashears* v. *Blassingame*, 1 id., 224; *Davis* v. *Davis*, 1 id., 226; *Grangiac* v. *Arden*, 10 J. R., 293; *Martin* v. *Funk*, 18 Alb. Law Jour., 451; *Butler* v. *Baker*, 3 Coke, 26; *Houser* v. *Sengeiser*, 1 Legal Chron., 149; *Garnors* v. *Knight*, 5 B. & C., 694–200; *Westerlo* v. *Dewitt*, 36 N. Y., 340; *Grower* v. *Grower*, 24 Pick., 261; *Draper* v. *Jones*, 11 Barb., 263; *McCarthy* v. *Dickey*, 12 J. R., 348; *Chapman* v. *Lathrop*, 6 Cow., 110; *Supra* v. *Marie*, 6 Wend., 77; *Fuller* v. *Bean*, 34 N. H., 303; *Mars-ton* v. *Marston*, 21 id., 491; *Thorpe* v. *Owen*, 5 Beavan, 224; *Fowler* v. *Stewart*, 1 McCord, 504; *Jones* v. *Blake*, 2

Hill's Chy., 632; *Dennis* v. *Alexander*, 3 Penn. St., 501; *Crawford's Appeal*, 61 id., 52, 53; *Tyler* v. *Strang*, 21 Barb., 206, *Esswing* v. *Seighing*, 2 Hill Chy. [S. C.], 601; 2 Schouler's Pers. Prop., 71; *Colwell* v. *Wilson*, 2 Spear, 75; *Allen* v. *Cowan*, 23 N. Y., 502; *Penfield* v. *Thayer*, 2 E. D., 306; 3 Wait's Actions and Defenses, 489–490; *Winter* v. *Winter*, 9 W. R., 747; Walker's American Law [7th ed.], 404; *Wing* v. *Merchant*, 57 Maine, 386; *Somers* v. *Humphrey*, 24 Ind., 281; *Burkholder* v. *Casad*, 47 id., 418–422; *Walker* v. *Walker*, 42 Ill., 311; *Brown* v. *Brown*, 1 Woodbury & Minot, 325; *Williams* v. *Sullivan*, 10 Rich. Eq., 217; *Bland* v. *McCulloch*, 9 W. R., 65; *George* v. *Bank of England*, 7 Price, 646, 651–653.) There was a sufficient acceptance. (*Marsh* v. *Austin*, 83 Mass., 235, 238; Walker's Am. Law [7th ed.], 403, note bottom page; *Lark* v. *Cunningham*, 7 Rich., 57, 62–64; *Hogan* v. *City Brooklyn*, 52 N. Y., 285, 287, 288; 2 Schouler on Pers. Prop., 85; *Hawley* v. *Keeler*, 43 N. Y., 114, 115; *Read* v. *Robinson*, 6 Watts & Sergt., 333.) Proof of acceptance was unnecessary, as it is presumed until rebutted by proof of actual dissent. (*Blanchard* v. *Sheldon*, 43 Ver., 514; 2 Greenl. on Ev., § 297; *Wall* v. *Wall*, 30 Miss., 90; 2 Schouler on Pers. Prop., 63, 85, 86; *Penfield* v. *Thayer*, 2 E. D. Smith, 3, 12; *Howard* v. *Savings Bank*, 40 Vt., 600; *Goss* v. *Singleton*, 2 Head, 67; *De Lavillan* v. *Evans*, 39 Cal., 120; *Lessee of Mitchell* v. *Ryan*, 3 Ohio, 377, 378; 3 Washburn on Real Prop. [3d ed.], 264, 265; *Cloud* v. *Cloud*, 10 Rich. Eq., 362.) The words "at my death," "wholly," "entirely," as used in the memoranda, only limit the time for which interest on the bonds is reserved. (*Knapp* v. *Warner*, 57 N. Y., 668; *Bridger* v. *Pierson*, 45 id., 601; *Springsteen* v. *Samson*, 32 id., 703; *Rathbone* v. *Dyckman*, 3 Paige Chy., 9; *Jackson* v. *Topping*, 1 Wend., 388.) The instruments are not testamentary. (1 Redfield on Wills [4th ed.], 5, 170; 2 Blackstone's Com., 499; 2 Bouvier's Institutes, § 2096; Jacob's Law Dictionary; *Patterson* v. *English*, 71 Penn. St., 454; 1 Jarmin on Wills

[3d ed.], 12; *Leisenbigler* v. *Gomley*, 56 Penn. St., 170; *In 're Diez*, 50 N. Y , 93; 9 Hebrews, 16, 17; *Donn* v. *Penny*, 19 Vesey, chap 546, 547; S. C., 1 Merivaile, 22; 3 Ducr on Insurance, 166, § 14; *Seaman* v. *Loring*, 1 Mason, 140; *Regina* v. *Ackwright*, 12 Q. B., 970; *Paynter* v. *James*, 2 Law Rep. [C. P.], 354; 1 Chitty on Cont. [11th ed.], 113; *Davis* v. *Ney*, 125 Mass., 590; *Stone* v. *Hackett*, 78 id., 227; *Ward* v. *Audland*, 16 Mess. & Welsh, 862; *George* v. *The Bank of England*, 7 Price, 646; *Johnson* v. *Smith*, 1 Vesey, Sr., 314; *Jaggers* v. *Estes*, 2 Strobhart's Eq., 343; *Bohn* v. *Headley*, 7 Harris & J., 257; *Golding* v. *Golding*, 24 Ala., 122, 126; *Elmore* v. *Mustin*, 28 id., 309; *Williams* v. *Sullivan*, 10 Rich Eq., 217; *Meek* v. *Holton*, 22 Ga., 461; *Watson* v. *Watson*, 22 id., 460; *Wall* v. *Wall*, 30 Miss., 91; *Wilks* v. *Green*, 14 Ala., 437; *Adams* v. *Brughton*, 13 id., 731; *Alexander* v. *Burnet*, 5 Rich. Law, 189; *Carter* v. *King*, 11 id., 125–129, 131; *Gregory* v. *Walker*, 38 Ala., 26, 27; *Harrison* v. *Rubey*, 9 Gill, 440; *Johnson* v. *Mitchell*, 1 Humph., 171–174; *McGlawn* v. *McGlawn*, 17 Ga., 234; *Herrington* v. *Bradford*, 1 Miss., 520; *Gordon* v. *Green*, 10 Ga., 534; *Delorey* v. *Delorey*, 24 Ark., 7; *Lentz* v. *Hertogg*, 4 Wharton, 520; *Hook* v. *Hook*, 13 B. Mon., 526.) These reservations are to be construed most strictly against the grantor and most beneficially for the grantees. (*Case* v. *Haight*, 3 Wend., 636; *Ives* v. *Van Auken*, 34 Barb., 566; *Berst* v. *Empie*, 5 N. Y., 40; *Jackson* v. *Hudson*, 3 J. R., 382; *Jackson* v. *Gardner*, 8 id., 308; *Cocheco* v. *Whittier*, 10 N. H., 305; *Jackson* v. *Blodgett*, 16 J. R., 172, 179; *Middleton* v. *Pritchard*, 4 Ill., 510, 522; *Carrington* v. *Goddin*, 13 Grattan, 587; 4 Cruise Dig., 245, 246, § 18; 4 id., 273, § 75; *Wells* v. *Dixon*, 9 East, 15; *Dakens* v. *Connolly*, 6 N. H., 421; *Jamaica Pond* v. *Chandler*, 9 Allen, 170; *Curtis* v. *Gardner*, 54 Mass., 461.) The reservation is strictly personal, and was available only to Joseph Young in his life-time. (*Davis* v. *Ney*, 125 Mass., 590 ; *Stone* v. *Hackett*, 78 id., 227 ; *Sebrell* v. *Couch*, 55 Ind., 123 ; *Witzel* v. *Chapin*, 1 Brad., 386; *Blanchard* v. *Sheldon*, 43 Vt., 512;

*Wyble* v. *McPheters*, 52 Ind., 393; *Martin* v. *Frank*, 18 Alb. Law Jour., 451; *Doty* v. *Wilson*, 47 N. Y., 580; *Kekewich* v. *Manning*, 1 De M.; *Connover* v. *Hall*, 36 Miss., 424; *Chew* v. *Beall*, 13 Md., 348, 349; *McKane* v. *Bonner*, 1 Bailey, 348, 349; *Langley* v. *Thomas*, 26 L. J. Chy., 609; *Brummett* v. *Barber*, 2 Hill [S. C.], 320; *Wolf* v. *Estch*, 7 Ind., 448; *Bland* v. *McCulloch*, 9 W. R., 65; *Duncan* v. *Self*, 1 Murph., 466; *Baker* v. *Williams*, 34 Ind., 534; *Moore* v. *Darlon*, 4 De G. & Sm., 517; *Patterson* v. *Murphy*, 11 Hare, 88; *George* v. *Bank of England*, 7 Price, 646; *Armstrong* v. *Timpeston*, 19 W. R., 558; *Stapleton* v. *Stapleton*, 14 Sim., 186; *Robert Appeal*, 85 Penn. St., 84; *Marden* v. *Chase*, 32 Me., 329.) The meaning of the memoranda is to be determined by the intent of Joseph Young. (*Nelson* v. *Eaton*, 26 N. Y., 415; *Cutler* v. *Wright*, 22 id., 472; *Brown* v. *Brown*, 34 Barb., 533; *Hatch* v. *Brewster*, 53 id., 276; *Brown* v. *Freeland*, 34 Miss., 181.) Reservation or condition in an instrument of gift inconsistent with the gift is void, and the gift absolute. (*Barks* v. *Marksley*, 3 Little, 273; *Robinson* v. *Cooper*, 6 Ga., 527, 528; *McDonald* v. *Wolgram*, 1 Sandf. Chy., 275; Wigran on Wills [Shaw's ed.], 2–274; *Stickton* v. *Simmis*, 7 J. J. Mar., 192; 2 Jamin on Wills [3d ed.], 14, 15; *Tyler* v. *Moore*, 42 Penn. St., 396; 1 Roper on Legacies, 783.) The transaction was a good declaration in trust. (2 Kent's Com. [12th ed.], 438, notes; *Penfield* v. *Mould*, L. R. [4 Eq.], 562–564; *Donaldson* v. *Donaldson*, Ray, 711; *Way's Trust*, De G., J. & Sm., 365; *Richardson* v. *Richardson*, L. R. [3 Eq.], 686; *Kehewich* v. *Manning*, 1 De G. M. & G., 176; *Crawford's Appeal*, 61 Penn. St., 52; *Osterman* v. *Baldwin*, 6 Wall., 116; *Armstrong* v. *Timpeston*, 19 W. B., 558; *Hayes* v. *Kershaw*, 2 Sandf. Chy., 251; *Adams* v. *Adams*, 21 Wall., 185; *Raybold* v. *Raybold*, 20 Penn. St., 308; *Ellis* v. *Secor*, 31 Mich., 185; *Hunting* v. *Bond*, 78 Penn. St., 210; *Day* v. *Roth*, 18 N. Y., 448; Perry on Trusts [2d ed.], § 82, and notes; Perry on Trusts, § 79, and cases cited; *Uran* v. *Coates*, 109 Mass, 581; *Morgan* v. *Malleson*, 10 L. R. [Eq.],

475; *Bottle* v. *Knocker*, 25 W. R., 209; *Patterson* v. *Murphy*, 11 Hare, 88; *Bond* v. *Bunting*, 78 Penn. St., 210; *Souberbye* v. *Arden*, 1 Johns. Chy., 240.)

RAPALLO, J. ⸳ The intention of Joseph Young deceased to give the bonds in controversy on this appeal to his son William H. Young, reserving to himself only the interest during his life-time, was so clearly manifested, that we have examined the case with a strong disposition to effectuate that intention and sustain the gift, if possible.

The transaction is sought to be sustained in two aspects. First as an actual executed gift, and secondly, as a declaration of trust. These positions are antagonistic to each other, for if a trust was created, the possession of the bonds, and the legal title thereto, remained in the trustee. In that case there was no delivery to the donee, and consequently no valid executed gift, while if there was a valid gift, the possession and legal title must have been transferred to the donee, and no trust was created. As each of these theories thus necessarily excludes the other, they must be separately considered.

To establish a valid gift, a delivery of the subject of the gift to the donee or to some person for him, so as to divest the possession and title of the donor, must be shown, and the first question which arises under the peculiar circumstances of this case is, whether it is practicable to make a valid gift *in præsenti* of an instrument securing the payment of money, reserving to the donor the accruing interest, and, if so, by what means this can be done. The purpose of such a gift may undoubtedly be accomplished by a proper transfer to a trustee and perhaps by a written transfer delivered to the donee, but the question now is, can it be done in the form of a gift, without any written transfer delivered to the donee, and without creating any trust. I can conceive of but one way in which this is possible, and that is by an absolute delivery of the security which is the subject of the gift, to the donee, vesting the entire legal title and possession

in him, on his undertaking to account to the donor for the interest which he may collect thereon. But if the donor retains the instrument under his own control, though he do so merely for the purpose of collecting the interest, there is an absence of the complete delivery which is absolutely essential to the validity of a gift. A gift cannot be made by creating a joint possession of donor and donee, even though the intention be that each shall have an interest in the chattel, especially where, as in this case, the line of division between these interests is not ascertainable. The reservation of the interest on the bonds to the donor was for an uncertain period, that is during his life-time, and until his death it was impossible to determine the precise proportion of the money secured by the bonds, to which the donee was entitled.

If therefore the donor retained the custody of the bonds for the purpose of collecting the accruing interest, or even if they were placed in the joint custody or possession of himself and the donee, there was no sufficient delivery to constitute a gift. But if an absolute delivery of the bonds to the donee, with intent to pass the title, was made out, the donor reserving only the right to look to the donee for the interest, the transaction may be sustained as an executed gift. (*Doty* v. *Willson*, 47 N. Y., 580.)

This brings us to an examination of the evidence. The written memoranda attached by the donor to the envelopes containing the bonds, evinced his intention to make a present gift to the respondent of an interest in the bonds, and shows that the disposition was not intended to be of a testamentary character. He declares that the bonds are owned by William H. Young, but the interest to become due on the same is owned and reserved by the donor for so long as he shall live, and that at his death the bonds are owned by the donee "absolutely and entirely" in one case, and "wholly and entirely" in the other. There are some verbal differences in the two memoranda, but the purport of both is the same. They both express in the same words that the interest to become due on the bonds is "*owned and reserved*" by the

donor for so long as he shall live, and that the bonds are not to belong " wholly " or " absolutely " to the donees till after his death.

The exhibition of these memoranda to the wife of the donee, and the declarations of the donor, show that what he had thus done was in pursuance of a settled purpose and that he believed that he had made a valid disposition of the bonds according to the memoranda, but they do not satisfy the requirement of an actual delivery..

The evidence touching the point of delivery is, that the deceased, for several years before his death, resided at the house of his son William H. Young, where there was a safe which had formerly belonged to the deceased, but which he is said to have presented to his grandson James C. Young, a son of William H., reserving to himself the right to use the safe, and in fact using it as a place of deposit for his valuable papers. That William H. Young also kept papers in the same safe, but rarely went to it himself, the deceased being in the habit of depositing therein for him such things as he desired, and removing them for him at his request.

The upper part of this safe was divided into pigeon-holes, where the deceased usually kept his papers and was in the habit, up to the time of the transaction now in question, of keeping the bonds in controversy. The lower part of the safe was divided into larger open compartments, one of which had been appropriated as the receptacle of the papers of William H. Young.

After affixing to the two envelopes in which the bonds were contained, the memoranda showing the dispositions in favor of his sons William H. Young and John N. Young, and after exhibiting these memoranda to the respective wives of the donees, the deceased replaced the two packages of bonds in this safe, and after his death they were found, not in the pigeon-hole where they had formerly been kept, but in the compartment where William H. Young's papers were kept. After the memoranda had been made, the bonds were generally kept in that compartment, but the deceased

had been seen by William H. to put them in the pigeon-holes and take them out with the indorsements on.

On the occasion of exhibiting the packages of bonds and the indorsements to Mrs. William H. Young, the deceased asked her to take them in her hands and see what he had written on them. But this was not intended as a delivery to her, for she asked him whether he wanted her to take them and put them up and he said no. After having thus exhibited them he took them back and placed them in the safe. The memoranda were made on the 14th March, 1874. The testator died November 12, 1875. In the meantime installments of interest on the bonds became due. The deceased cut off the coupons, and on some occasions William H. Young assisted him in so doing, but William H. testified that he never asserted any ownership over the bonds as against his father. And the testimony shows that they were at all times under the control of the deceased, although William H. Young and his son James C. Young, also had access to the safe. Those three however were the only persons having access to the safe and it does not appear that John N. Young the other donee named in the memoranda ever had any control over the bonds or access thereto. It was also shown that after the alleged gift, when solicited for a loan, the deceased said that he supposed he might with the boys' consent take some of their bonds. Also that he called the attention of his grandson James C. Young to the memoranda and said, "you see what I have done with them." That he declared to a witness, Benjamin Grant, that what he had left, he had given to William and Newton. That in September, 1875, he took from one of the envelopes a bond of $1,000, being one of those stated in the memorandum indorsed to belong to John N. Young, and gave it to a third party, but it also appeared that he had before making the memorandum presented John N. Young with $1,000.

This is the substance of all the testimony by which a delivery to the donee is sought to be established. It shows

that the deceased at no time parted with the possession or control of the bonds, but merely confirms the intention expressed in the memoranda. The change of the position of the bonds in the safe where they were kept, from the pigeon-hole to the compartment, might have been significant had William H. been the only donee, and had the intended gift been unaccompanied by any reservation. But under the existing circumstances it cannot be construed into a delivery of the bonds. In the first place, part of the bonds were stated in the memoranda to be given to William H., and part to John N. Young. The intention of the donor towards each of his sons was the same. Yet no attempt appears to have been made to effect any sort of delivery to John N. Moreover, the form of the intended gift shows that no immediate delivery could have been contemplated by the deceased. The memorandum on each envelope says that the interest to become due on the bonds is " owned and reserved" by the donor. This interest, up to the dates of the maturity of the bonds respectively, was represented by coupons attached to the bonds. It clearly could not have been intended to deliver them, for so many of them as might become due during the life of the donor were reserved from the gift; as the interest was expressly declared to be " owned" by the donor, and not parted with. The possession of these coupons was necessary to enable him to collect the interest, and he availed himself of it for that purpose from time to time. No intention was manifested to deliver up these vouchers, and look to the donees for the interest. No division of the coupons could be made, for the period of the donor's life was uncertain; and further, if all the coupons were retained by the donor, they might not represent the entire interest reserved by him. The bonds matured in 1887 and 1888, and some were redeemable earlier ; and if he had lived until the maturity of the bonds, or until the United States bonds were called in by the government, as they were liable to be, the donees would not then have been entitled to the possession of the bonds or their proceeds. The reserva-

tion accompanying the gift would entitle the donor to possession of the fund. The intention of the donor, as deducible from the memoranda and the evidence, was, not to part with his title to the accruing interest, but to keep the bonds and collect the interest for his own use till he should die; and that then, and not before, his sons should have possession of them and own them absolutely. That although he meant that their right to this interest in remainder should be vested and irrevocable from the time of the supposed gift, yet that at no time during his life did the donees have exclusive possession of the bonds or the legal right to such possession.

The declarations of the donor that he had given the bonds to his sons, must be understood as referring to the qualified gift which he intended to make. There is nothing to indicate that he ever relinquished his right to the interest, and all the circumstances of the case show that he could not have intended to admit that he had made an absolute gift, free from the qualification expressed in the memoranda. The cases of *Grangiac* v. *Arden* (10 J. R., 295); *Davis* v. *Davis* (8 Nott & McCord, 226), and kindred cases, consequently have no application. The principle of those cases was applied in the late case of *Trow* v. *Shannon**(Ct. App., Nov., 1879), but in that case the gift was intended to be absolute. No qualification was attached to it, and the bonds were placed where they were accessible to the donee and he had himself collected the interest for his own use. There was nothing inconsistent with a full delivery, but there was no direct evidence of such delivery, and the admissions of the donor that she had given the bonds and they belonged to the donee, were received, and weight given to them, as some evidence from which the jury might infer that the gift had been completed by an absolute delivery.

It is impossible to sustain this as an executed gift, without abrogating the rule that delivery is essential to gifts of chattels *inter vivos*. It is an elementary rule that such a

---

* 78 N. Y., 446.

gift cannot be made to take effect in possession *in futuro.* Such a transaction amounts only to a promise to make a gift, which is *nudum pactum.* (*Pitts* v. *Mangum,* 2 Bailey S. C., 588.) There must be a delivery of possession with a view to pass a present right of property. "Any gift of chattels which expressly reserves the use of the property to the donor for a certain period, or (as commonly appears in the cases which the courts have had occasion to pass upon) as long as the donor shall live, is ineffectual." (Schouler on Pers. Prop., vol. 2, p. 118, and cases cited; *Vass* v. *Hicks,* 3 Murphy [N. C.], 494.) This rule has been applied even where the gift was made by a written instrument or deed purporting to transfer the title, but containing the reservation. (*Sutton's Exr.* v. *Hallowell,* 2 Dev., 186; *Lance* v. *Lance,* 5 Jones L. Rep., 413.)

The only question remaining, therefore, is whether a valid declaration of trust is made out.

The trust contended for, if put into words, would be that the donor should hold the bonds and their proceeds for his own benefit during his life and to the use of the donees from the time of his own death.

Of course no trust was created of the interest for the donor's own life, for he was the legal owner of the income of the bonds, and never parted with this right — nor could he be at the same time trustee and *cestui que trust.* The trust then would be to hold to the use of the donees an estate in remainder in the bonds, which should vest in possession in the donees at the time of his death.

The difficulty in establishing such a trust is that the donor did not undertake or attempt to create it, but to vest the remainder directly in the donees. Assuming, for the purposes of the argument, that he might have created such a trust in himself, for the benefit of his sons, and, further, that he might have done so by simply signing a paper to that effect and retaining it in his own possession, without ever having delivered it to the donees, or any one for them, yet he did not do so. He simply signed a paper certifying that

the bonds belonged to his sons. He did not declare that he held them in trust for the donees, but that they owned them, subject to the reservation, and were at his death to have them absolutely. If this instrument had been founded upon a valuable consideration, equity might have interfered and effectuated its intent by compelling the execution of a declaration of trust, or by charging the bonds, while in his hands, with a trust in favor of the equitable owner. (*Day* v. *Roth*, 18 N. Y., 448.) But it is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made, or not at all. When, therefore, it is found that the gift which the deceased attempted to make failed to take effect for want of delivery, or a sufficient transfer, and it is sought to supply this defect and carry out the intent of the donor by declaring a trust which he did not himself declare, we are encountered by the rule above referred to. (Story's Eq., 706, 787, 793, *b. c. d ; Antrobus* v. *Smith*, 12 Ves., 39, 43; *Edwards* v. *Jones*, 1 My. & Cr., 226; 7 Sim., 325; *Price* v. *Price*, 8 Eng. L. and Eq., 281; *Hughes* v. *Stubbs*, 1 Hare, 476.) It is established as unquestionable law that a court of equity cannot by its authority render that gift perfect which the donor has left imperfect, and cannot convert an imperfect gift into a declaration of trust, merely on account of that imperfection. (*Heartley* v. *Nicholson*, 44 L. J. Chy. Ap. [N. S.], 279.) It has, in some cases, been attempted to establish an exception in favor of a wife and children, on the ground that the moral obligation of the donor to provide for them constituted what was called a meritorious consideration for the gift, but Judge STORY (Eq. Jur., vol. 2, § 987, and vol. 1, § 433) says that that doctrine seems now to be overthrown, and that the general principle is established that in no case whatever will courts of equity interfere in favor of mere volunteers, whether it be upon a voluntary contract, or a covenant, or a settlement, however meritorious may be the consideration, and although the beneficiaries stand in the

relation of a wife or child. (*Holloway* v. *Headington*, 8 Sim., 325; *Jefferys* v. *Jefferys*, 1 Craig & Phillips, 138, 141.)

These positions are sustained by many authorities. To create a trust, the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another. (*Martin* v. *Funk*, 75 N. Y., 134; per CHURCH, Ch. J.) Though it is not. necessary that the declaration of trust be in terms explicit, the donor must have evinced by acts which admit of no other interpretation, that such legal right as he retains, is held by him as trustee for the donee. (*Heartley* v. *Nicholson*, 44 L. J. Ch. Ap. [N. S.], 277; per BACON, V. C.) The settler must transfer the property to a trustee, or declare that he holds it himself in trust. (*Milroy* v. *Lord*, 4 De G. F. & J., 264; per Lord KNIGHT BRUCE.) In cases of voluntary settlements or gifts, the court will not impute a trust where a trust was not in fact the thing contemplated. The distinction between words importing a gift, and words creating a trust, is pointed out by Sir GEO. JESSEL in *Richards* v. *Delbridge* (L. R. [18 Eq. Cas.], 11), as follows : "The making a man trustee involves an intention to become a trustee, whereas words of gift show an intention to give over property to another, and not to retain it in the donor's hands for any purpose, fiduciary or otherwise."

The words of the donor in the present case are that the bonds are owned by the donees, but that the interest to accrue thereon is owned and reserved by the donor for so long as he shall live, and at his death they belong absolutely to the donees. No intention is here expressed to hold any legal title to the bonds in trust for the donees. Whatever interest was intended to be vested in them, was transferred to them directly, subject to the reservation in favor of the donor during his life, and free from that reservation at his death. Nothing was reserved to the donor, to be held in trust or otherwise, except his right to the accruing interest which should become payable during his life. It could only be by reforming or supplementing the language used, that a

trust could be created, and this, as has been shown, will not be done in case of a voluntary settlement without consideration. There are two English cases, where indeed the circumstances were much stronger in favor of the donees than in the present case, which tend to sustain the position that a settlement of this description may be enforced in equity by constituting the donor trustee for the donee. They are *Morgan* v. *Malleson* (L. R. [10 Eq. Cas.], 475), and *Richardson* v. *Richardson* (L. R. [3 Eq. Cas.], 686.)   In the first of these cases, *Morgan* v. *Malleson* (L. R. [10 Eq. Cas.], 475), the intestate signed and delivered to Dr. Morris a memorandum in writing :   " I hereby give and make over to Dr. Morris one India bond," but did not deliver the bond.   Sir JOHN ROMILLY sustained this gift as a declaration of trust.   The case is referred to by CHURCH, Ch. J., in *Martin* v. *Funk*, as an extreme case.   In *Richardson* v. *Richardson* an instrument purporting to be an assignment, unsupported by a valuable consideration was upheld as a declaration of trust. In speaking of these cases in *Richards* v. *Dalbridge* (L. R. [18 Eq. Cas.], 11), Sir GEO. JESSEL, M. R., says :   " If the decisions of Lord ROMILLY (in *Morgan* v. *Malleson*), and of V. C. WOOD (in *Richardson* v. *Richardson*) were right, there never could be a case where the expression of a present gift would not amount to an effectual declaration of trust."   And it may be added that there never could be a case where an intended gift, defective for want of delivery, could not, if expressed in writing, be sustained as a declaration of trust. Both of the cases cited are now placed among overruled cases.   (Fisher's Ann. Digest [1873 and 1874], 24, 25.) In *Moore* v. *Moore* (43 L. J. Ch. App. [N. S.], 623), HALL, V. C., says :   " I think it very important indeed to keep a clear and definite distinction between these cases of imperfect gifts, and cases of declarations of trust ; and that we should not extend beyond what the authorities have already established, the doctrine of declarations of trust, so as to supplement what would otherwise be mere imperfect gifts."   If the settlement is intended to be effectuated by gift, the court

will not give effect to it by construing it as a trust. If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust. (*Milroy* v. *Lord,* 4 De G. F. & J., 264.)

The case of *Martin* v. *Funk* and kindred cases cannot aid the respondent. In all those cases there was an express declaration of trust. In the one named the donor delivered the money to the bank, taking back its obligation to herself in the character of trustee for the donee; thus parting with all beneficial interest in the fund, and having the legal title vested in her in the character of trustee only. No interposition on the part of the court was necessary to confer that character upon her; nor was it necessary by construction or otherwise to change or supplement the actual transaction. None of the difficulties encountered in the present case stood in the way of carrying out her intention. It was capable of being executed in the form in which it was expressed.

The question whether a remainder in a chattel may be created and given by a donor by carving out a life estate for himself and transferring the remainder, without the intervention of a trustee, is learnedly discussed in the appellant's brief; but the views we have expressed render it unnecessary to pursue that inquiry. We are satisfied that it is impossible to hold that the facts, as they appear, establish a valid transfer of any interest in the bonds in question to the donee, and that the attempted gift cannot be sustained as a declaration of trust. It follows that the judgment of the General Term must be reversed, and the decree of the surrogate affirmed. Costs of all the parties in this court and in the Supreme Court to be paid out of the estate.

All concur.

Judgment reversed.