Where about two years before testator's death he assigned certain corporate stock, in writing, as absolute gifts, and one of the donees had the certificate transferred to him on the books of the corporation before the death of the donor, and the other put his certificate in a box in a safe without having it transferred on the books of the corporation, to which safe the donor had a key, and thereafter the donor made a codicil in his will revoking a former bequest of the stock on the stated ground that he had otherwise disposed of it, such gifts cannot be deemed to take effect in possession or enjoyment at or after the donor's death, within Transfer Tax Law, § 220, subd. 3, so as to render them subject to the tax.

In the matter of the appraisal of the estate of Daniel A. Bullard for transfer tax. From the order of appraisement, Daniel A. Bullard and others appeal. Modified.

James W. Verbeck, for appellants.

Potter, Kellogg & King, for respondent state comptroller.

LESTER, S. The county treasurer, in appraising this estate under the law relating to taxable transfers, included therein 300 shares

of the capital stock of the Ft. Miller Pulp & Paper Company, valued at $45,000; also 240 shares of the capital stock of the National Bank of Schuylerville, valued at $31,200. This resulted in a tax of $400 upon property reported by the appraiser to have passed from the decedent to Daniel A. Bullard, 2d; a tax of $156 upon property reported to have passed from the decedent to Helen F. Brisbin; and a tax of $156 upon property reported to have passed from the decedent to Charles E. Brisbin. The evidence shows that the decedent on the 5th day of February, 1898, executed a written transfer of the paper company stock to his grandson Daniel A. Bullard, 2d, and delivered the scrip, with the transfer indorsed thereon, to his said grandson, who put it in the safe of the Schuylerville Paper Company, of which corporation he was a director and secretary and treasurer, with his other papers. It remained thereafter in the possession of the grandson until the stock was transferred to him on the books of the corporation, a few days before the grandfather's death. It is conceded that the transfer of this stock in 1898 was made in pursuance of a verbal arrangement between the decedent and his two grandsons, Daniel A. Bullard, 2d, and Charles E. Brisbin, which is stated to have grown out of a previous "misunderstanding." Some 10 days after the assignment and transfer of the scrip, the decedent made a codicil to his will, revoking the bequest of the stock contained in his will, and stating as the reason for such revocation that the testator had otherwise disposed of the stock. It further appeared that at the time of the original assignment and delivery of the stock, on the 5th day of February, 1898, Daniel A. Bullard, Sr., was indebted to the corporation in the sum of about $5,000 on an account standing against him on the books of the corporation. Daniel A. Bullard, 2d, testifies that the gift of the paper company stock to him was absolute, and that he got the revenue therefrom absolutely thereafter. Mr. Thorpe, the treasurer of the corporation, testifies that the dividend of May, 1899, was credited to the account of Daniel A. Bullard, Sr.; that the dividend of May, 1900, was also credited in the same account, but that the dividend of May last did not go toward the indebtedness of Daniel A. Bullard, Sr. He further says that since he knew the stock was in the possession of the grandson the latter had gotten checks or money from him, by the grandfather's direction, to the amount of $5,000 at one time. He further says that Daniel A. Bullard, 2d, wrote him when he sent him the scrip for the purpose of having the stock transferred to him on the books of the company that he would assume his grandfather's indebtedness. It appears that Daniel A. Bullard, Sr., continued to act as a director and as president of the corporation down to the time of his decease, on the 7th of April, 1901. Mr. Wagman, the vice president of the paper company, says he did not know that the grandson owned the stock; but Mr. Thorpe, the secretary, treasurer, and general manager, says he knew the grandson had the certificate for about two years before the grandfather's decease. The theory upon which the appraiser held these shares of the paper company to be liable to taxation must have been that the transfer was made "in contemplation of the death of

the grantor, vendor or donor, or intended to take effect in possession or enjoyment, at or after such death," according to the language of subdivision 3 of section 220 of the tax law.

The words "in contemplation of death," in the statute, do not refer to that general expectation which every man entertains of death, as an ultimate termination of his career. They mean an apprehension of death from some present disease or some other impending peril. In re Seaman's Estate, 147 N. Y. 69, 77, 41 N. E. 401; In re Spaulding's Estate, 49 App. Div. 541–549, 63 N. Y. Supp. 694; In re Birdsall's Estate, 22 Misc. Rep. 180–195, 49 N. Y. Supp. 450. The evidence does not reveal any such contemplation of death on the part of the donor, and it remains to consider whether it shows that the gift was "intended to take effect in possession or enjoyment at or after" his death. The counsel for the comptroller urges that the facts that the deceased continued to act as director and president of the paper company up to the time of his death; that Daniel A. Bullard, 2d, never acted as a stockholder during his grandfather's lifetime; that one of the officers of the company did not know of the grandson's ownership of the stock until it was transferred upon the books; that Mr. Bullard, Sr., received dividends, and said or intimated that his grandson was to have his interest when he died,—that these facts show it was intended that the gift of this stock should take effect upon the death of the donor. The facts in respect to the gift of the bank stock were not very different from those relating to the gift of the paper company stock. Both transactions took place at the same time. The bank stock was assigned to Charles E. Brisbin and Helen F. Brisbin, his mother, and the certificate was delivered to Charles E. Brisbin at the same time the certificate and assignment of the paper company stock was delivered to Daniel A. Bullard, 2d. Brisbin took this certificate, and the assignment of transfer thereof, and placed them in a box in the safe of the Schuylerville Paper Company, with his other papers, to which both he and his grandfather thereafter had access, and to which his grandfather then gave him a key. There is the same positive statement by Daniel A. Bullard, 2d, that the gift of the bank stock was an absolute one. Daniel A. Bullard, Sr., continued to act as president and as a director of the bank until his death, and up to that time the stock had not been transferred upon the books of the bank; and Daniel A. Bullard, Sr., while he lived, took the dividends, Mr. Brisbin says, without his consent. The facts in the present case are widely different from those of the case of Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634. In the present case there was an actual delivery of the scrip, and a written transfer to the donee of the paper company stock, and a like delivery to one of the donees of the bank stock. Daniel A. Bullard, 2d, took the certificate of the paper company stock, and kept it in his exclusive possession until it was transferred on the books of the company. Charles E. Brisbin took the certificate and transfer of the bank stock, and he himself placed it with his other papers in the box, to which he had a key, and in which the donor also kept papers, and of which the donor also had a key. In the Young Case the certificates were never delivered to the donees. They were shown to the wives of the donees, and

then put by the donor into the safe. In the present case there was an actual delivery to the donees, who from the time of such delivery always had it in their power to make a transfer of the stock on the books of the paper company and of the bank, respectively. The same difference exists between the case under consideration and In re Sharer, 36 Misc. Rep. 502, 73 N. Y. Supp. 1057. The fact that Daniel A. Bullard, 2d, and Charles E. Brisbin forbore to have the transfer of the stock made, and permitted their grandfather to retain his position as director and president, and permitted him to take dividends, would not change the absolute character of the original gift.

There does not seem to be sufficient affirmative proof to bring the case within the statute for the purpose of imposing a tax upon these stocks. Such a tax cannot be imposed upon a mere suspicion of the existence of a secret understanding of the parties, when their affirmative acts and declarations and writings were sufficient to constitute a valid present gift. •

I must hold that the stocks in question were not owned by the decedent at the time of his death, and are not taxable, and, as the decedent's personal estate did not amount to $10,000, that his estate is not liable to any tax; and a decree modifying the original determination accordingly may be entered. Decree modified.