WILLIAM H. PAINE *vs.* WILLIAM W. PAINE, EXR., ET AL.

MAY 22, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Voluntary Trusts.*

G. P., the father of W. P., on the latter attaining his majority, wrote the son that he had transferred certain property to him, and "your mother's stock in the A. Co. I have retained in such manner that the income goes to me, but so that neither your creditors can get it if you meet with disaster, nor can my creditors touch it if I am unsuccessful."

The same day the father transferred 110 shares of the stock of the A. Co., as follows: "G. P. Atty for W. P." The certificate was never delivered to the son, and he knew nothing of it until after the death of his father. The latter voted on the stock and collected and used the dividends, and subsequently cancelled the certificate, and a new one was issued, without consideration, to a relative, and again retransferred by the latter to him and remained in his possession in that form at his death.

Prior to the death of the father he wrote the son, disclaiming that he held any funds of any kind belonging to the son:—

*Held*, that no valid trust was created in favor of the son.

BILL IN EQUITY to compel transfer of certain stock. Heard on exceptions to findings and opinion of Superior Court, and exceptions sustained.

BLODGETT, J. The underlying question in this case is whether a valid trust was created by the late George T. Paine in favor of his only child, the complainant, by the terms of a communication which the father sent to the son on his attaining his majority on July 10, 1890, of which the material portion is as follows: "Through your mother whose wishes I have tried to follow, and shall continue to do, you to-day are entitled to quite a property. I have transferred a portion of it to you, sufficient for you to build a fortune for yourself in later years, or if misfortune should come to you (it does to 19 out of 20 persons) you will then be glad you have no more to be lost, and that my foresight in retaining the balance for your future benefit will not leave you in want and penury. The two houses on Broadway, which were your mother's I retain under the law, being 'tenant by courtesy' and your mother's stock in the Akerman Company I have retained in such manner that the income goes to me, but so that neither your creditors can get it if *you* meet with disaster—nor can my creditors touch it if I am unsuccessful."

On the same day the father transferred certain stocks to the name of the son and transferred the one hundred and ten shares of stock in the Akerman Company, which are the subject of the present controversy, and of which company George T. Paine was the treasurer, as follows: "George T. Paine, Atty. for W. H. Paine." It is conceded that the one hundred and ten shares in question were the individual property of Louise Mason Paine, the deceased wife of George T. Paine; that she deceased intestate in 1883, and that by the statutes of distribution then in force in this State said George T. Paine thereupon became entitled to the stock in question as her husband by virtue of his right to administer upon her estate without account. It is conceded also that the certificate thus issued on July 10th, 1890, was never delivered to the complainant, and that he had no knowledge of the existence of the same until after his father's death in 1903; that George T.

Paine voted on the stock and collected and applied to his own use all the dividends thereon until June 3, 1891, when he surrendered and cancelled said certificate and issued, without consideration, another certificate for said one hundred and ten shares to one Caroline E. Jackson, his sister-in-law, then living in Massachusetts, in order, as he stated, to avoid what he called "double taxation" thereon; and that later, on June 13, 1896, upon the statement of George T. Paine that the question of taxation had been adjusted, and at his request, Mrs. Jackson retransferred the same without consideration to the name of George T. Paine and a new certificate in that form was then issued and remained outstanding in the possession of George T. Paine at the time of his decease in 1903.

(1)     It is also conceded by the testimony that subsequent to 1890 an estrangement occurred between the complainant and his father, and that on January 9, 1897, the latter wrote a letter to his son in which he stated: "I have no funds of any kinds in my hands belonging to you in trust or that have accumulated for your benefit from your mother's estate. . . . The husband is the heir at law of all the personal estate of the wife, he paying all her personal bills."

In *Ellison* v. *Ellison*, 6 Vesey, p. 661, the rule is thus stated by Lord Chancellor Eldon: "I take the distinction to be, that if you want the assistance of the Court to constitute you *cestuy que trust*, and the instrument is voluntary, you shall not have that assistance for the purpose of constituting you *cestuy que trust;* as upon a covenant to transfer stock, etc., if it rests in covenant, and is purely voluntary, this court will not execute that voluntary covenant; but if the party has completely transferred stock, etc., though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced by this court.

And in *Milroy* v. *Lord*, 4 De G. F. & J. 264–275, Lord Justice Turner observes: "I take the law of this court to be well settled, that, in order to render a voluntary settlement valid and effectual, the settler must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property

and render the settlement binding upon him." In *Richards* v. *Delbridge*, 18 L. R. Eq. 11–15, Jessel, Master of the Rolls, approves *Milroy* v. *Lord, supra,* as does also Vice Chancellor Bacon in *Heartley* v. *Nicholson,* 19 Eq. Cas. L. R. 233–242, and in *Warriner* v. *Rogers,* 16 Eq. Cas. L. R. 340–349. See also *In Re Breton's Estate,* 17 Ch. Div. L. R. 416, 421; *Young* v. *Young et al.,* 80 N. Y. 422.

We are compelled to the conclusion that George T. Paine did not create a valid trust in said one hundred and ten shares of stock in favor of the complainant. He did not even part with the present beneficial interest in the stock, inasmuch as he admittedly received all the dividends thereon. Indeed, the language of Lord Justice Knight Bruce in *Milroy* v. *Lord, supra,* at p. 272, might be applied with almost literal exactness to the action of George T. Paine in the case at bar: "He was during the whole time, and when he died, the legal proprietor of them," (certain bank shares) "and unless so far, if at all, as the beneficial title was affected by that instrument, the absolute proprietor of them beneficially likewise. He might, however, have affected the legal title. It was in his power to make a transfer of the shares so as to confer the legal proprietorship on another person or other persons. But, as I have said, no such thing was done."

Obviously this transaction could not be sustained as a testamentary disposition of the stock, even if his subsequent exercise of dominion over the same by his transfer and the retransfer of the same, and his denial that he was in any manner trustee for the son, had never been made, and it follows that the complainant's bill must be dismissed.

The decree of the Superior Court is reversed, and the case is remanded to the Superior Court with direction to enter a decree dismissing the complainant's bill.

*John Henshaw,* for complainant.

*Herbert Almy and Dexter B. Potter,* for respondent.