In the Matter of the Judicial Settlement of the Accounts of NELLIE L. ANTHONY and Another, as Executors, etc., of CARRIE L. COURTNEY, Deceased.

WILLIAM F. COURTNEY, One of the Executors, etc., of CARRIE L. COURTNEY, Deceased, Appellant; NELLIE L. ANTHONY, One of the Executors, etc., of CARRIE L. COURTNEY, Deceased, and Another, Respondents.

Fourth Department, June 29, 1932.

*Elmer R. Weil* [*Benedict T. Mangano* of counsel], for the appellant.

*George T. Vandermeulen*, for the legatee, respondent, C. Belle Gross.

*Benjamin C. Mead*, for the respondent Nellie L. Anthony, legatee, executrix.

SEARS, P. J. The will of the testatrix, Carrie L. Courtney, contained the following provisions: "*First*. I give, devise and bequeath to my nieces, Nellie L. Anthony, Isabel C. Hammond and L. Belle Gross, and to my nephews, William F. Courtney, Claire E. Courtney, John H. Courtney and Charles E. Courtney, all the property of every name and nature, both real and personal, which now comes to me from the estate of my brother, Charles E. Courtney, deceased, or to which I may now be or hereafter entitled, or which shall come to my estate from the estate of my said brother, in any way as one of his next of kin and heirs at law, or as legatee or residuary legatee under his will, the same to be divided between the seven of them equally, share and share alike. The property disposed of by this clause of my Will is all which comes to me or shall come to me or my estate from the estate of my said brother, Charles E. Courtney, or by virtue of his will.

"*Second*. All the rest, residue and remainder of my property I give, devise and bequeath to my three nieces, Nellie L. Anthony, Isabel C. Hammond and C. Belle Gross, the same to be divided between them, equally, share and share alike."

The question involved in this appeal is whether certain personal property of which the testatrix was possessed at the time of her death falls within the provisions of the paragraph of the will marked " first," or passes as a part of the residuary estate under the paragraph marked " second." The surrogate has held upon consolidated proceedings for a construction of the will and a judicial settlement that the property was not within the description of paragraph " first " but passed to the residuary legatees under paragraph " second " of the will. It is from the decree so determining the character of the property involved that William F. Courtney, one of the legatees mentioned in the " first " paragraph, and also an executor of Carrie L. Courtney's will, has appealed.

Charles E. Courtney, of Ithaca, N. Y., the brother of the testatrix, in 1918 owned certain Liberty bonds and War Savings stamps of the value of about $20,000. During that year he went to the office of Arthur D. Weller, the treasurer of the Ithaca Trust Company. Courtney, according to Weller's testimony, then told Weller that he wanted to arrange it in some way so that his sister Carrie L. Courtney would have $10,000 in case anything happened

to him, and he wanted the advice of Weller as to how to arrange this and still hold the securities until after his death. Weller advised Courtney that if Courtney wanted to segregate the securities for his sister in a way, in his deposit box, the best thing for him to do was to put them in an envelope marked, " Property of " his sister. Courtney then in the presence of Weller took $10,000 in Liberty bonds and put them in an envelope and said, " That is the way I want it done." On the envelope was written, " Property of Carrie L. Courtney." The envelope containing the bonds and so marked was then put in Courtney's safe deposit box and continued to remain in his box until his death. Charles E. Courtney lived two years after this transaction, dying July 17, 1920. Courtney left a will, which was duly probated, by which he devised and bequeathed his property to the Ithaca Trust Company, the executor named in the will, in trust, to pay the income to Sarah D. Courtney, the testator's wife, for life, with power to invade the principal to provide the testator's wife comfortable support and maintenance, with remainder after the death of testator's wife to the testator's sister, Carrie L. Courtney. Shortly after the death of Charles E. Courtney, the bonds which had been placed in the envelope in Charles E. Courtney's safe deposit box, marked " Property of Carrie L. Courtney," were delivered by the Ithaca Trust Company to Carrie L. Courtney, who rented a safe deposit box at the Ithaca Trust Company's banking office on September 30, 1920, and the bonds which she had received were placed in this box. In 1926 these bonds were sold by order of Carrie L. Courtney and the proceeds of the sale invested in other securities. The property now in dispute and involved in this appeal was purchased from the proceeds of the sale of the Liberty bonds already mentioned. Carrie L. Courtney's will was executed August 11, 1920. Whether it was before or after she received the securities from the Ithaca Trust Company is not clear. Carrie L. Courtney outlived her brother Charles about ten years, dying on March 16, 1930. Sarah D. Courtney, the wife of Charles E. Courtney, is still living.

The transaction which took place in the presence of Weller and under his advice when Charles E. Courtney set aside the $10,000 of Liberty bonds, placed them in an envelope and marked them, did not result in a transfer of title. The gift was incomplete. There was no delivery of the bonds; no deed of gift. (*Young* v. *Young*, 80 N. Y. 422; *Bedell* v. *Carll*, 33 id. 581; *Beaver* v. *Beaver*, 117 id. 428.) Although the marking of the envelope with the words, " Property of Carrie L. Courtney," would, in the absence of other proof, be sufficient evidence of a gift and of all of the

necessary elements to complete the gift, including intent and delivery (*Miller* v. *Silverman*, 247 N. Y. 447; *Govin* v. *deMiranda*, 140 id. 474; *Matter of Gallagher*, 153 id. 364; *Beck* v. *Staudt*, 149 App. Div. 35; affd., 208 N. Y. 566), in the present case the effect of the writing upon the envelope as an admission or declaration against interest is wholly negatived by the testimony of Weller mentioned above, in which he recites in detail the circumstances accompanying the placing of the bonds in the envelope and the writing of the words on it, circumstances entirely inconsistent with the necessary elements of a completed gift. All elements of a declaration of trust are absent. (*Young* v. *Young*, *supra.*) The Liberty bonds contained in the envelope continued to be the property of Charles E. Courtney and as such passed under his will.

The act of the Ithaca Trust Company in delivering these bonds after the death of Charles E. Courtney to his sister was, doubtless, in good faith and in the belief that the bonds belonged to Carrie L. Courtney. Such, however, was not the case. The bonds in question were a part of the trust to be held under the will of Charles E. Courtney by the trustee during the life of the wife of Charles E. Courtney. While it is true that Carrie L. Courtney, the testatrix, may have believed that the bonds had been given to her by her brother during his lifetime, and were received by her as a gift from him, the fact was otherwise.

The language of the will now becomes important. It cannot be said positively when Carrie L. Courtney received the bonds from the Ithaca Trust Company. She put them in the safe deposit box which she rented on the 30th day of September, 1920. Her will is dated fifty days earlier. The " first " clause in her will is sweeping and distributes among all her nephews and nieces, seven in number, all of the property which she had received or was to receive from the estate of her brother. The last sentence discloses the broad character of this provision. The residuary estate, however, is given to three nieces, nephews being excluded. We may surmise that her intention in these provisions was that the property she got from her brother was to be distributed among all members of her family. Her other property, little in amount, she wished to give to the women among her relatives rather than to distribute it to men and women relatives alike. This surmise leads naturally to the view that she intended to cover by the paragraph of the will numbered " first " all property obtained from her brother Charles. Whether this is the proper ground for the distinction between the " first " and " second " clauses or not, we find that the securities here in question did belong to the estate of Charles E. Courtney

and were given to his sister by the executor of Charles E. Courtney's will. Whatever may have been the thoughts which motivated their delivery and acceptance, they were actually received by her from the executor of her brother's will when they were the property of the estate. The executor thus anticipated, improperly to be sure, though doubtless innocently, the time when under the will the bonds should come into her possession. Under these circumstances we reach the conclusion that the securities in question fall within the description of property contained in the " first " paragraph of testatrix's will.

The fact that almost twelve years have elapsed since the death of Charles E. Courtney and the delivery of the bonds to Carrie, we deem immaterial. We need not consider what rights the Ithaca Trust Company, as executor and trustee under the Charles E. Courtney will, may have as to this property, or what Mrs. Courtney's rights may be toward the Ithaca Trust Company or the property or the income therefrom. These matters ar immaterial to the decision of this appeal. All that we determine in this proceeding is that the securities in question are included within the description of property in the " first " paragraph of the will.

The decree appealed from should be reversed on the law, with costs to the appellant payable out of the estate, and the matter remitted to the Surrogate's Court to enter a decree in accordance with this opinion.

All concur.

Decree reversed on the law and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion, with costs to appellant payable out of the estate.