Daniels, J.
The disposition of the action depended upon the title to a sum of money paid into court by the Mutual Benefit Life Insurance Company, in satisfaction of a policy of life insurance, issued by it to and upon the life of Richard W. Hurlburt. The policy was issued in the year 1845, for the sum of $3,000, payable to the assured, his executors, administrators or assigns. He paid the premiums upon it until and including May, 1887, and he himself died in September of the same year.
On the 10th of June, 1887, he executed a formal assignment of all sums of money, interest, benefit and advantage, to arise, or be had, by virtue of the policy, to the plaintiff in this suit. And in case of . her decease prior to his own, then to another person, who, if he also previously became deceased, then the policy was directed to revert to the assured. The assignment was drawn and executed at the office of the agency of the company and witnessed by its cashier. It was forwarded to the company and a copy of *33 it retained and filed, and thereupon it was returned, with the endorsement that if the assignment should be after-wards canceled, the holder should return it to the company. In August, 1887, and after the assignment itself had in this manner been returned to the assured, he wrote a letter to the plaintiff, who was his daughter, informing her of this assignment of the policy. And he stated in his letter to her, that he had attached to the policy a document whereby at his decease, the company would pay over to her the sum of $3,000. and which he stated might do her some good, and help her along in her struggle for bread.
A dispute arose between the plaintiff and the defendant, as the administratrix of the assured, as to which had the better right to the moneys paid by the company, in discharge of its liability under the policy. And it was held at the trial under this state of facts, that the title to the money had become vested in the plaintiff, and that she was entitled to recover it in this action, and upon the accuracy of this decision the disposition of the case is now mainly made to depend.
What the assured intended to do was to give the insurance and the money resulting from it to his daughter, he, in the meantime, designing to pay the premium and keep the insurance in life. And to create such a gift, it is beyond dispute the law of the case, that a delivery of the assignment must have been made to the donee. Delivery is essential to a gift of personal property, and it must be such “ as to vest the donee with the control and dominion over it, and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title to the property in the donee.” Jackson v. Twenty-Third Street Railway Co., 88 N. Y., 520, 526.
In that case there was no such delivery to the testator, and because of its absence, the action was not permitted to be sustained. The same principle was followed in Wallace v. Berdell (97 N. Y., 13). But it is not necessary that the delivery of the thing intended to be given should be made directly to the person intended to receive or be invested with the gift, but it may be made to another person for him, when that is done, so as to divest the possession and title of the donor. Young v. Young, 80 N. Y., 422, 430. And what took place concerning this insurance seems to have been attended with that effect. Hutchings v. Miner, 46 N. Y., 456.
The assignment, so far as it was for the benefit of the plaintiff, was absolute, and subject only to the contingency of her surviving her father, the assured, who was the assignor. And it was delivered to the company, intending to secure such action on its part as would recognize the right and title of the plaintiff to the money, and place the com- *34 pony under the obligation to pay it over to her upon the decease of the assured, unless the assignment should be after-wards cancelled and returned. It appears to have been accepted by the company with that understanding, and with the intent to hold the money afterwards for the benefit of the plaintiff. And for the expression of that intent, after it. had filed away a copy of the assignment, it made the endorsement, which it did upon the original, before it was returned. The assignor acquiesced in the action of the company, which had been taken in this manner at his instance, and informed the plaintiff of the transaction, giving her by the letter written to her by himself the right to look to. and hold the company as her debtor for the payment of this money. And she accordingly accepted the gift, and proceeded to enforce it after the decease of her father, by supplying the usual proofs of death, and demanding of the company the payment of the money. More was done in this instance to confer upon her the title to the insurance money than was sanctioned as being attended with the like effect, in the case of Martin v. Funk (75 N. Y., 134).
There the donor made a deposit in a savings bank, declaring in the account that it was in trust for another person. And that was held to be equivalent to a gift of the money by the depositor to the beneficiary. There was not only the-intention to make a gift of these moneys to the plaintiff, but the company which was to be the debtor after the decease of the assured, was appraised of it and placed in such a position as to be obligated to pay it over to her, and she was-informed of what had been done in this mannér to secure to her the payment and benefit of the fund. The assignment, under this state of facts may legally be held to have been delivered to the insurance company for the benefit of the-plaintiff, and the effect of the delivery was not defeated by afterwards returning the assignments to the assignor, after the company had complied with what appeared to be essential to mature its obligation. As to this part of the case the ruling at the trial appears to have the support of the law.
To defeat the right of the plaintiff to maintain the action, proof was given under the answer, showing that a general assignment was made on the 11th of September, 1884, by a firm, of which the assured was a member. This assignment was not only made of the partnership property for the benefit of the firm creditors, but in addition to that, it was declared that the assignors sold, assigned, delivered and conveyed to the assignee, all and singular, their real estate and personal property of every kind and nature, held and owned bythem respectively as their separate and individual property. And under this assignment it was urged at the trial that the assured had became divested of his interest in. *35 the policy prior to his assignment in 1887, to the plaintiff, and that she acquired no title whatever, under that assignment, but the defendant was in no ways connected with this assignment, or with the right or title of the assignee under it. And it did not appear that the policy of life insurance was ever passed over or delivered to the assignee, or in any manner claimed by him, but the probabilities of the case, warrant the conclusion that it remained in the possession of the assured himself, and he paid the premiums upon it, which by its own language was indispensably necsary to keep the policy alive. In this manner he had from time to time renewed it for his own benefit, subsequent to the time of the execution and delivery of the assignment. If that had not been done by the payment of the annually accruing premium the policy would have ceased to exist and become null and void. In this manner the assured continued the insurance himself after the time when the general assignment was executed and delivered, and he had secured to himself its benefit as an insurance upon his life, by wThat had taken place after the general assignment was made, and which, if it had been omitted, would have avoided the policy. And that gave him the right certainly against the personal representative of his own estate, to assign the insurance to the plaintiff in the action as he is already shown to have done.
And the court on this account was right in overruling the objection that the plaintiff could not maintain the action because of this preceding general assignment. In this respect the case differs very materially from those which have been referred to in support of this objection, and required the plaintiff’s right to be maintained as superior to that of the general assignee.
It was shown at the trial that a large amount of the debts of the firm of which the assured was a member, remained unpaid. And the right of the plaintiff to the insurance money was further resisted by the defendant, under the authority conferred upon her as administratrix by chapter 314 of the Laws of 1858, to impeach and set aside the assignment of the insurance for the benefit of the creditors of the testator. And because he was insolvent, and gave the insurance to the plaintiff, it was claimed at the trial that his assignment was void as a matter of law, as made with the intent to hinder, delay and defraud creditors. But there was no proof that he was actuated with that intent other than the presumption arising out of the facts of his insolvency at the time of the assignment, From that fact, however, and the donation of the money to the plaintiff, it might have been inferred, if the case had been submitted to the jury, that the assignment to the plaintiff was attended with this intent. But the court was not requested to submit this *36 point to the jury. The counsel for each of the parties on the contrary regarded the case as dependent solely upon legal propositions. And on behalf of the defendant, the court was asked to direct a verdict in her favor upon this and the other grounds which have been considered. That the court was not justified in doing, for the law has declared that the question of a fraudulent intent, in cases of this description, shall be one of fact and not of law, and, therefore, to be submitted to the jury. 3 R. S. (6th ed.), 145, §4. It would have been an infraction of this direction of the law for the court to have required a verdict from the jury ón this ground without submitting to them, for their consideration, the evidence concerning the facts. This exception, as well as the others, was not well taken. Neither was the exception to the direction of a verdict by the court, after the defendant had presented all the points m the case to the justice presiding at the trial, to be considered and decided by him. The motion for a new trial should be denied, and the plaintiff should have judgment on the verdict.
Van Brunt, P. J., and Brady, J., concur.