POTTER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

MUNICIPAL CORPORATIONS—SEWERS—CONTRACTS—EMPLOYMENT—DURATION.
    A contract provided that, in consideration of the payment of $10 per day, a civil engineer was to lay out a sewer system for a village, and superintend and inspect, as supervising engineer, the construction of any sewers authorized to be constructed within a year from the date of the letting of the contract. The contract specified no time for the duration of the employment. *Held*, that such contract could not be terminated at any time, as being a contract for indefinite hire, but, in the absence of good ground for discharge, the engineer was entitled to employment until the completion of the sewers.

Appeal from trial term, Kings county.
Action by Alexander Potter against the city of New York. From so much of a judgment as dismissed the second cause of action contained in the complaint, plaintiff appeals. Reversed.
Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and SEWELL, JJ.

J. M. Ferguson, for appellant.

William J. Carr (Jerome W. Coombs, on the brief), for respondent.

HIRSCHBERG, J. The complaint contains three causes of action. The plaintiff recovered on the first, the second was dismissed, and the third was withdrawn upon the trial. The first and second causes of action are based on a written agreement made April 23, 1895, between the plaintiff and the board of sewer commissioners of the village of Far Rockaway, N. Y., whereby the plaintiff claims to have been employed as engineer to prepare specifications and supervise the construction of a system of sewers for that village, for the sum of $10 per· day. The first cause of action is for compensation from the time plaintiff commenced work until August 5, 1897, when he alleges he was wrongfully discharged by the board. The second cause of. action is for damages resulting from the discharge. The defendant is sued as successor in liability to the village, under the terms of section 4 of the Greater New York charter (chapter 378, Laws 1897).

The power to employ was conferred by chapter 375 of the Laws of 1889, entitled "An act to provide for the construction of sewers in any incorporated village of this state." Section 2 of this act provides for the appointment of sewer commissioners. Section 3 authorizes such commissioners, before taking proceedings for the construction of sewers under the act, to cause a map or plan to be made of a permanent system of sewerage for the village; "and for that purpose the board of sewer commissioners may employ a competent engineer and such other persons as said board of sewer commissioners may deem necessary, but the total expenses thereof shall not exceed one thousand dollars, and the amount of such expenses shall be included in the next annual tax levy of such village as a part of the ordinary expenditures of the village, and shall be paid by the village treasurer upon the order of the board of sewer commissioners, signed by the president and countersigned by the clerk of such board." Other sections of the act provide for the submission of the question of the construction of the sewers to voters at a special election to be held, upon the board declaring by resolution "their intention to construct the same"; the advertising for proposals for the performance of the work "either under entire contract, or in parts or in sections, under special contract," as the board shall deem for the best interests of the village; and the acquisition of land and the raising of the necessary funds for the improvement. And by section 13 authority is conferred upon the board "to employ a supervising engineer to superintend and inspect the construction of any sewers or works connected therewith authorized to be constructed by this act, and to pay him a compensation not exceeding ten dollars per day, and such other inspectors as may be necessary, and to pay them a compensation not to exceed two and· one-half dollars per day each, which shall be included in their estimate of the expenses of the construction of the same, and shall be paid as a portion thereof."

The contract between the plaintiff and the sewer commissioners provides that, in consideration of the payment of $10 per day, the plaintiff agrees (1) to make a survey of the village, taking measurements, levels, etc., both in and outside of the village, necessary to complete the work; (2) to make a map showing locations of sewers, manholes, etc.; (3) to prepare profiles of every street, showing sewers and their depth below the surface; (4) to design changes in the map and plan of the system of sewers of such a character as shall meet with the approval of the state board of health; (5) to prepare a report setting forth the reason for the adoption of each feature of the system; (6) to recommend the best system of sewerage, disposition and disposal, and to prepare complete plans and specifications therefor, which shall be acceptable to the state board of health; (7) to prepare complete specifications for the construction of the system; and "(8) to superintend and inspect, as supervising engineer, the construction of any sewers authorized to be constructed within a year from the date of the letting of the contract." The board of sewer commissioners bound itself by the contract to pay the plaintiff the sum of $10 per day in consideration of the performance of the above-specified work; the plaintiff's appointment as supervising engineer "to date three months prior to the date hereinafter decided upon, when the bids are opened for the construction of the system of sewers." The contract further provided that in case it should be thereafter decided by law that "the appointment of the supervising engineer" could not be legally made until after the election for sewerage was carried, and if at that time the board should, for reasons not apparent at the time of signing the contract, "appoint another engineer," then the plaintiff's claim for services rendered prior to the election should become a claim against the members of the board individually, in which event the amount due the plaintiff was fixed at the sum of $750. The election appears to have been carried in favor of the construction of the sewerage system in accordance with the plaintiff's designs, plans, and specifications, and the first contract was given to R. B. Mitchell & Co. The dates, respectively, of the election and of the awarding of the contract do not appear. On March 15, 1897, the work was taken from that firm, and carried on by the public authorities until October 28, 1897, when another contractor (Nicholas Blasi) was employed; and the work was finally completed on February 1, 1898. The plaintiff fully performed the terms of the contract, making all the surveys, maps, profiles, designs, reports, plans, and specifications called for, and superintending and inspecting, as supervising engineer, the conduct of the work, until the receipt by him on August 5, 1897, of a written notice from the board that "his services at ($10) ten dollars per day as engineer" were discontinued in accordance with the terms of the contract. It was admitted that from that date he notified the commissioners that he stood ready to perform his services to the completion of the work.

No question is raised as to the power of the board of sewer commissioners, under the statute, to make this contract with the plaintiff. The learned counsel for the respondent make no claim that the sub-

sequent adoption of the plaintiff's proposed sewer system by the voters, and the practical recognition of the validity of the contract by the board of sewer commissioners in the acceptance of the plaintiff's services, did not constitute a ratification of the original hiring; but the claim is made that under the terms of the contract no time was specified, and that accordingly the relations were severable at the pleasure of either party. This was the view taken by the learned trial justice, and the complaint was dismissed as to the second cause of action because, in the view of the court, the hiring was general and indefinite, which might be terminated by either party at any time, and "an engagement for a definite period cannot be spelled out from the written contract." I cannot accord with this view. The case of Martin v. Insurance Co., 148 N. Y. 117, 42 N. E. 416, which is the authority for this decision, only decides that a general or indefinite hiring does not import an employment by the year, and that, although the compensation agreed upon is at an annual rate, the hiring is to be regarded as indefinite, in the absence of an agreement for a specified term. The converse of the proposition is equally true, and a hiring may be for a fixed and determinate period, although the compensation may be agreed upon at a per diem rate. In this case it was impossible to fix the period of time in advance; for the sewage system proposed or to be proposed had not been lawfully adopted or authorized, and it was not known how long a time would be required in the accomplishment of the work. But the contract was made so as to cover the entire work incident to the scheme, whatever might be the period of time ultimately required. In order to determine the length of the employer's engagement to pay, it is only necessary to ascertain the duration of the employé's engagement to work. The agreement to pay is to be measured by the agreement to work. What the plaintiff agreed and bound himself to do in addition to all the preliminary work was to superintend and inspect, as supervising engineer, the "construction" of all sewers which might be lawfully authorized within one year from the letting of the contract. This engagement appears to be absolute, unqualified, and unlimited. The word "construction," as used in the contract, meant the actual building, not the commencement merely, but the fulfillment and completion; and, if a lump sum had been fixed as compensation, no one would pretend that the plaintiff could lawfully elect to quit work in the middle of the job. And, if he should elect under this contract to cease work while the system was in process of construction, the board might well say:

"You have agreed to supervise this work without any qualification, but in its entirety. We have hired you to superintend it, because it is your design, and you are familiar with all its details; and we have agreed to pay you the maximum sum allowed by law, in order to secure your services at every stage of the improvement, and until the work is completed as an entire and homogeneous system."

I think the plaintiff would be compellable, under the contract, to supervise the construction of the sewers, as he expressly agreed to do, and that the employment is for a fixed period, not known in advance as a measure of time, but dependent upon the duration of a

distinct job or piece of work, which, as a job, is fixed and determined by the period of time required in its fulfillment. Had the plaintiff agreed to construct the sewers at $10 a day, he could certainly have been held to the performance of the completed work, and the same principle applies to his agreement to supervise the construction. This rule is supported not only by the provision liquidating the plaintiff's pay at the sum of $750, instead of at the rate of $10 per day in case of an unfavorable election, or in case of the appointment of another engineer at the time of the election, but also by another provision of the contract. The contract provides that "if, for any reason, work should be suspended for a greater period than three weeks, no pay will be demanded for time in excess of said period." It is difficult to see any good reason for the insertion of this provision, if the board were only hiring the plaintiff by the day, with liberty to terminate his right to compensation at any time at will. It is evident that the contract was designed on both sides to cover the entire period of construction,—the plaintiff to be paid for that period at the rate specified, excepting during temporary suspensions for the excess over three weeks each,—and that, in the absence of any good ground for his dismissal from the employment, he is entitled to recover damages for the breach complained of. The judgment, so far as appealed from, must be reversed, and a new trial had of the second cause of action.

Judgment, so far as appealed from, reversed, and new trial of the second cause of action granted; costs to abide the event. All concur.