### OUTERBRIDGE v. CAMPBELL et al.

(Supreme Court, Appellate Division, Second Department. November 13, 1903.)

1. ATTACHMENTS—AFFIDAVITS—NONRESIDENTS.
   An attachment affidavit alleging that defendants were not residents of New York, but resided in San Antonio, in the state of Texas, were engaged in business in said state, and were not citizens of the state of New York, sufficiently alleged defendants' nonresidence to sustain an attachment on that ground.

2. PRINCIPAL AND AGENT—PRACTICE—TERMINATION.
   Where defendants appointed plaintiff as their agent in New York for the sale of Texas Bermuda onions, to be shipped to such state and sold by plaintiff on commission, but no time was fixed for the continuation of such employment, it was subject to termination at defendants' election.

Appeal from Special Term, Kings County.

Action by Thomas J. Outerbridge against Royer Campbell and another. From an order vacating an attachment against defendants' property, plaintiff appeals. Affirmed.

Plaintiff's attachment affidavit alleged that defendants during all the times thereafter mentioned were, and still are, nonresidents of the state of New York, and are copartners in business under the firm name of Campbell & Urquhart, but reside and are so engaged in business at San Antonio, in the state of Texas, and were and still are engaged in the business of selling and shipping from the state of Texas certain produce, known as "Texas Bermuda onions," and that both the de-

¶ 1. See Attachment, vol. 5, Cent. Dig. § 308.

fendants are not residents of the state of New York, but reside in
San Antonio, in the state of Texas, and are not citizens of the state
of New York.

Argued before GOODRICH, P. J., and JENKS, WOODWARD,
HIRSCHBERG, and HOOKER, JJ.

James Z. Pearsall, for appellant.
Arnold Charles Weil, for respondents.

HIRSCHBERG, J. The order vacating the attachment was
granted by the justice of the Supreme Court who issued it. It was
granted upon the original papers, and no opinion was written. An
examination of the points made by the learned counsel for the re-
spondents discloses but one which appears to justify the order, and
upon that alone can an affirmance be predicated, although that goes
to the foundation of the action, and the order permits a renewal of
the application for an attachment "upon further and additional papers."

The allegation as to the nonresidence of the defendants was clearly
sufficient. See Hayden v. Mullins, 76 App. Div. 69, 71, 78 N. Y. Supp.
553. But it seems to be settled that the plaintiff's moving papers on
an application for an attachment must show the existence of a good
cause of action, and in this respect the papers herein are apparently
defective. See Wessels v. Boettcher, 69 Hun, 306, 23 N. Y. Supp.
480, affirmed in 138 N. Y. 654, 34 N. E. 513; Carrier v. United
Paper Co., 73 Hun, 287, 26 N. Y. Supp. 414; McDonald v. Manico,
65 App. Div. 610, 72 N. Y. Supp. 543.

The plaintiff sues for damages in the loss of prospective profits,
occasioned by the alleged breach on the part of the defendants of a
contract by which the plaintiff was created their exclusive agent to
sell their products in the state of New York. The defendants are
copartners engaged in the state of Texas in the business of selling and
shipping certain produce, known as "Texas Bermuda onions." The
plaintiff is a commission agent in New York. The complaint alleges
that in May, 1903, the parties entered into an agreement by which, to
quote the language of the complaint—

"Defendants agreed, among other things, that the plaintiff should act as the
agent of the defendants in the state of New York, and that the plaintiff should
have the sole and exclusive sale of all of defendants' goods or produce, con-
sisting of Texas Bermuda onions, shipped by defendants to said state of New
York, and that, if said defendants should sell any of their said goods or
produce in New York by cars direct, plaintiff would be paid and allowed by
defendants brokerage on such sales; and the defendants further agreed
that, in case they sold cars direct in New York, they would hold up the price
of their said goods and produce in New York, and would not interfere with
any of the plaintiff's trades in relation thereto, and, in consideration thereof,
plaintiff agreed with defendants that he would sell in New York all the goods
and produce which the defendants might ship to New York, at the best market
prices."

There is no suggestion in the complaint of any agreement as to the
duration of the contract, the time being wholly indefinite. There is
an allegation that the defendants "represented to and informed plain-
tiff about the time of the making of the said agreement" that the de-
fendants would ship to New York upwards of 150 car loads of the

onions, but there is no allegation that they agreed to do so, and no allegation of any period, definite or otherwise, within which the shipment was to be made.   The complaint further states the rate of commission which the defendants agreed to pay the plaintiff for his services; that certain shipments of onions were made by defendants to the plaintiff prior to June 3, 1903; that the plaintiff sold the onions so shipped at the highest market prices, retained his commissions out of the purchase money, paid defendants drafts, and still retains in his hands a balance of $1,597.84; that on or about June 3, 1903, the defendants employed another agent in the state of New York, and shortly thereafter notified the plaintiff of that fact, and that he would no longer represent them as their agent.   The plaintiff, upon these facts, demands judgment for $9,200 damages, consisting of the loss of prospective commissions and alleged injury to his credit and business by the defendants' breach of the contract, but upon which claim he credits the sum of $1,597.84, which he holds as the balance due to the defendants upon the business which he transacted for them before they terminated the agreement.

In Martin v. Insurance Co., 148 N. Y. 117, 42 N. E. 416, it was held that where one was hired for an indefinite time, although at an annual rate of compensation, the employment was at will, and could be terminated at any time by either party.   That decision was followed by this court in Fisher v. Sanchez & Haya Company, 44 App. Div. 629, 60 N. Y. Supp. 1138.   In Potter v. City of New York, 59 App. Div. 70, 68 N. Y. Supp. 1039, we found an agreement for a fixed period, which took the case away from the ruling in Martin v. Insurance Co., supra; and in Hotchkiss v. Godkin, 63 App. Div. 468, 71 N. Y. Supp. 629, the agreement was for one year's services, to be compensated by 12 monthly installments of salary.   In each case, therefore, there was a provision in the contract which clearly manifested an intention to create a fixed and definite period as the term of the employment. But in this case the defendants do not agree to employ the plaintiff as their agent, even for the current shipping season, nor does the plaintiff bind himself in any way to serve the defendants as their agent for any definite time.   He was certainly at liberty to cease representing his principals whenever he deemed it for his interest so to do, and a like privilege must be regarded as belonging to the employers.   In this respect the case is very like that of Willcox & Gibbs Co. v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94, 35 L. Ed. 882, where it was held that a contract of agency, which leaves the agent free to terminate his relations with the principal upon reasonable notice, must be construed to confer the same right upon the principal, unless provisions to the contrary are stipulated.   The court quoted with approval from Story on Agency, §§ 462, 463, the general rule (page 637) that:

"The principal has a right to determine or revoke the authority given to his agent at his own mere pleasure, for, since the authority is conferred by his mere will, and is to be executed for his own benefit and his own purposes, the agent cannot insist upon acting when the principal has withdrawn his confidence, and no longer desires his aid."

The case of Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676, cited by the learned counsel for the

appellant, presents an entirely different question. There the plaintiff had fully performed a prescribed condition, which entitled him, under their agreement, to be made the defendant's sole agent; and the latter, after receiving the benefit of the plaintiff's performance, repudiated the contract, and refused to create the agency. It was held that the plaintiff was entitled to recover the lost value of the contemplated agency, as the measure of damages for the breach of the contract. So, in Bathrick v. Coffin, 13 App. Div. 101, 43 N. Y. Supp. 313, the plaintiff had rendered valuable services, the full proceeds of which the defendant had received; and the defendant thereupon arbitrarily terminated the contract, without requiting the plaintiff even for the work then actually done. The complaint was dismissed at the trial term, and it was held upon appeal that there was sufficient evidence to require submission of the question of damages to a jury. Here, however, the plaintiff has not only been fully paid for all services actually rendered, but admits the possession of a large additional cash balance. His grievance is confined to the fact that his principals have seen fit to terminate an agency which was not created for any definite period, but under which, while it was in existence, he has been fully compensated in accordance with its terms. The right to terminate the agency seems clear, from the authorities herein considered, and it necessarily follows that the complaint fails to state a good cause of action. The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.