### WINSLOW v. MAYO.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. PRINCIPAL AND AGENT—CONTRACT FOR SALE OF GOODS ON COMMISSION— AGENCY AT WILL—TERMINATION.

Defendant agreed to give plaintiff the right to sell "any or all" of a stock of goods on a commission on all sales made by him, and plaintiff agreed to devote his entire time to the sale of the goods. If defendant should receive an offer for the goods he agreed to give plaintiff the opportunity to place them at the same or a higher price, and in the event of plaintiff's failing to dispose of them defendant had the right to accept the offer and agreed to acquaint plaintiff with the name of the party making it. *Held*, that the contract, as to its consideration, related entirely to the services to be performed by plaintiff, any sale by him being a consideration for the commission promised, and as he was not bound to sell "any or all" of the goods, or to devote any definite time to the sale of them, defendant was not bound to hold them until plaintiff should sell "any or all" of them, and the contract created merely an agency, revocable at the will of either party on performance of the obligations up to such termination.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 54, 72.]

2. SAME—NOTICE BY PRINCIPAL OF TERMINATION OF AGENCY.

After plaintiff had sold part of the goods, defendant received an offer for those which would remain after filling plaintiff's orders up to a certain future date, notice of which offer defendant claimed that he gave to plaintiff by letter, though plaintiff testified that he did not receive the letter; and on the date specified defendant notified plaintiff that he had accepted the offer. *Held*, that the contract did not contemplate that defendant should search out plaintiff and inform him of the offer; and as there was nothing to show that defendant did not act in entire good faith, and, though plaintiff testified that he could have sold the goods in course of time for equal or better prices, it did not appear that he could by any pos-

sibility have produced an offer as advantageous in all respects, defendant was liable to him only for the commissions earned before the termination of the agency.

Hooker, J., dissenting.

Appeal from Trial Term.

Action by Harry F. Winslow against Marcellus F. Mayo. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before WOODWARD, JENKS, HOOKER, MILLER, and GAYNOR, JJ.

Edward S. Clinch, for appellant.

Frank Harvey Field, for respondent.

WOODWARD, J. The defendant is engaged as a warehouseman, under the firm name of Mayo & Campbell. He had in storage certain dry goods from the firm of Charles H. Hamilton & Co., which latter firm had given notes for the purchase price of the goods; the notes being indorsed or guaranteed by the defendant, and the goods being in his possession as collateral. The plaintiff had been in the employ of Charles H. Hamilton & Co., and when that firm became insolvent, and it came to his knowledge that the defendant was called upon to realize upon his securities, he sought and obtained employment for the sale of such goods. From the surrounding circumstances it must be plain that the plaintiff understood that the goods were to be sold within a reasonable time. The defendant was not a merchant. He was simply holding goods as collateral to his indorsement of the notes given by Charles H. Hamilton & Co., and it was because of the insolvency of that firm, throwing the plaintiff out of employment, that the latter came to the defendant for the contract, the breach of which is alleged as the groundwork of this action. The following is the agreement between the parties:

"Messrs. Mayo & Campbell agree to give Mr. Winslow the right to sell any or all the woolen and cotton goods now stored with them, and formerly the property of the firm of Charles H. Hamilton & Co., and agree to pay Mr. Winslow a commission of four per cent. (4%) on all sales made by him after the approval of the credit of the buyers by Messrs. Mayo & Campbell, said commissions to be paid on receipt of the amount of the bills from buyers by Messrs. Mayo & Campbell. Mr. Winslow agrees to devote his entire time to the sale of this merchandise, he to have free access to the same for examination and sampling, and this agreement to cover both local and out of town trade. It is further understood that, if Messrs. Mayo & Campbell receive an offer for all or any part of the goods herein mentioned, they agree to give Mr. Winslow the opportunity, before accepting said offer, to place at the same or a higher price the goods on which an offer has been received, and that, in the event of his being unable to dispose of them, Messrs. Mayo & Campbell are at liberty to accept the offer made, and such acceptance shall in no wise be considered or construed as a violation of this agreement; and Messrs. Mayo & Campbell further agree to acquaint Mr. Winslow with the name of the party making any such offer as herein mentioned. Messrs. Mayo & Campbell reserve the right to consummate the deal at present pending with one certain firm in New York City, and if such deal be finally made it is mutually agreed by both the parties hereto that this agreement shall be considered null and void."

It was stipulated before the trial that the amount of the judgment, if for the plaintiff, should be the amount which the court has fixed, so that the case is not complicated by any mere errors in the figures,

which have been misstated in some portions of the decision, and the only question of importance to be determined is whether the defendant, by entering into an arrangement with the firm of Hyde & Jacobson, by which the latter undertook to sell the goods remaining after the plaintiff's orders had been filled up to the 20th of April, 1904, 1 month and 20 days after the date of the plaintiff's contract or agreement, and to advance the money to meet the notes of Charles H. Hamilton & Co. as they fell due, committed a breach of any right which the plaintiff had under his agreement. It is to be observed that there is no consideration expressed in the agreement on the part of the plaintiff, except that he "agrees to devote his entire time to the sale of this merchandise"; but that is a long way from an agreement on his part to sell the merchandise, or to devote any particular time to it. For instance, if he had gone out on the 2d day of March, 1904, the day following the making of his contract, and had devoted the entire day to an effort to "sell any or all the woolen and cotton goods" involved in the transaction, and failed to make a sale, and he had abandoned the undertaking at that time, would the defendant have had any remedy against him? Could it have compelled him to devote any more time to the undertaking? Could it have had a cause of action for his refusal to devote more time? The agreement simply provided that the defendant would "give Mr. Winslow the right to sell any or all the woolen and cotton goods," and, if he sold "any or all" of these goods he was to have a commission of 4 per cent. upon the amount of such sales, and he was to "devote his entire time to the sale of" "any or all" of this merchandise. Obviously the contract did not bind the plaintiff to devote a single day to the sale of these goods. He did not, even inferentially, undertake to sell all of the goods, for his commissions were to be paid, not upon the basis of the entire stock, but "on all sales made by him," whether these sales were of a few hundred dollars, or of the entire amount. Clearly the contract, in so far as its consideration goes, relates entirely to the services performed by the plaintiff. If he sells any goods, then there is a consideration for the commissions promised to be paid; but there is not the slightest legal obligation on the part of the plaintiff to devote any particular time to the work, and, if he sickened of his contract after selling the cream of the stock, the defendant would have no way of compelling him to continue in the effort to sell, and no remedy for his failure to devote his entire time to the sale.

As the plaintiff was not bound to sell "any or all" of the merchandise, as he was not obligated to devote any definite time to the sale of "any or all" of the goods, so the defendant was not bound to hold the merchandise until the plaintiff should sell "any or all" of them, under well-known rules of law (Outerbridge v. Campbell, 87 App. Div. 597, 84 N. Y. Supp. 537; Lawrence v. Dixey, 119 App. Div. 295, 104 N. Y. Supp. 516), for the reason that the agency was one at will, and might be terminated by either party, upon the payment by the defendant of any commissions which had been earned up to the time that notice of termination was given. (Outerbridge v. Campbell, supra). At least this is the rule, unless it can be discovered, from the further pro-

visions of this contract or agreement that the parties contemplated a different contract, one which would bind the plaintiff and the defendant for a definite time. Is there any such provision? The defendant does, on his part, agree that, if he receives an offer for these goods, he will give an opportunity to the plaintiff to place the goods at the same or a better price, and, in the event of the plaintiff failing to dispose of the goods, the defendant is to be permitted to sell the goods, and the defendant agrees to acquaint the plaintiff with the name of the party making the offer; but it does not appear that this was for any other purpose than to insure the bona fides of the offer. It is apparent that the parties contemplated some time to elapse before the goods were likely to be sold; but what the length of time would be was not mentioned or indicated in any way, and the fact, known to the plaintiff, that this was a stock held by a warehouseman as collateral, would indicate that the length of time was of a limited duration. On the 20th of April the defendant wrote a letter to the plaintiff, reciting the agreement, and telling him that the defendant had had an offer from Hyde v. Jacobson, who had agreed to take the entire lot and to give market prices, advancing a sufficient sum to meet the Charles H. Hamilton notes, and closing with these words:

"As we gave you an opportunity to find some one who would take them on the same terms or better, and you have not done so, we have closed the deal with the parties mentioned above."

It is claimed on the part of the defendant that notice was given to the plaintiff some time previous by means of a letter addressed to him, which the plaintiff testifies that he did not receive, and it appeared upon the trial that at least some transactions in these merchandise with Hyde & Jacobson took place as early as March 28th, but whether before or after the writing of the alleged letter, which the plaintiff says he did not receive, the record does not show. It is to be observed, however, that by the terms of the contract the defendant only agreed to give the plaintiff an "opportunity, before accepting such offer, to place at the same or higher prices"; and it cannot be doubted that up to the 20th of April all of the goods sold by the plaintiff were delivered and he received his commissions on the same, so that, up to the time of the termination of his agency, he had an opportunity to sell "any or all" of the goods for which the firm of Hyde & Jacobson had contracted. This clause of the contract did not, we assume, contemplate an active duty of searching out the plaintiff and informing him of the offer. He was to have an opportunity of selling any or all of the goods during the continuance of the agency. While the agency lasted he was to have an opportunity to sell any of the goods, notwithstanding an offer to the defendants for the same; but there was no contract binding upon either party to continue the agency for any given time, and, the plaintiff having had at all times up to the 20th day of April the opportunity of selling "any or all" of the goods, and having been paid his full commissions upon all sales up to that time, we find nothing in the language of the contract which extended it beyond the will of the defendant, acting in good faith, and paying all commissions earned while the plaintiff was enjoying the opportunity.

No fraud is alleged. There is nothing to show that the defendant did not, in entire good faith, write a letter to the plaintiff telling him of this offer of Hyde & Jacobson; and it does not appear that the latter could, by any possibility, have produced as good an offer for the goods. His mere testimony that he was willing and able to perform all of the conditions is not evidence that he could have produced a customer who would have been willing to equal the terms offered by Hyde & Jacobson. Their offer not only took the entire stock, agreeing to pay market prices; but they agreed to advance the money to pay the notes on which the defendant was obligated, and, unless the plaintiff was prepared to do this, the defendant had a perfect right to dispose of the goods, even during the continuance of the agency. The privilege promised to the plaintiff, in the event of an offer, was to have the opportunity to place "at the same or a higher price the goods on which an offer has been received"; and the testimony of the plaintiff that he could have sold the same in the course of time for equal or better prices, assuming it to have this probative force, is not equivalent to evidence that he could have provided an equally advantageous arrangement for the defendant, and that is what the spirit of the contract clearly requires. He had the opportunity to sell the goods at equal or better prices up to the 20th of April. He was paid all that he had earned up to that time, and there is no evidence that he could have duplicated or bettered the offer made for the entire stock; and under all of the circumstances we are of the opinion that the contract of agency bound the defendant only to pay the commissions earned during the time that the plaintiff was actually engaged in an effort to sell the goods before the termination of the agency.

The suggestion of the learned trial court that "it appears from the evidence that the goods were readily salable, and it is reasonably certain that plaintiff could have sold them if he had been given the opportunity," does not reach the essence of the contract, assuming it to have been continuous. The defendant reserved the right to sell unless the plaintiff could duplicate or better the offer; and there is not a particle of evidence to show that the plaintiff could, within any reasonable time, have sold all of the goods for the then market prices, or that he could have found any one who would have advanced the money to pay these notes, and the approving of credits was one of the things specially reserved to the defendant. The plaintiff was not obliged to sell all of the goods. He was not bound to sell any of them, and the contract, lacking in elements of mutuality, if construed to continue until all of the goods were sold on the part of the defendant, we conclude that it is merely a revocable contract of agency at the will of either party, upon the performance of the obligations up to such termination.

The judgment appealed from should be reversed, with costs. All concur, except HOOKER, J., who dissents.