## Matter of the Estate of HEBER R. BISHOP, Deceased.

*(Surrogate's Court, New York County, February, 1915.)*

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—AGREEMENT AS TO MAN-
AGEMENT OF TRUST FUNDS NOT ENFORCIBLE AGAINST TRUSTEES—WANT
OF CONSIDERATION FOR PROMISE OF LIFE TENANTS TO WAIVE THEIR
RIGHT TO PROPORTIONATE SHARE OF EXTRAORDINARY DIVIDENDS.

Executors, upon accounting as such in 1908, paid over to themselves as trustees the residuary estate of their testator which, in part, consisted of certain shares of the stock of the Standard Oil Company of New Jersey which were equally divided among the eight trust funds created for the eight children of decedent. Thereafter, by the decree of the federal court dissolving said corporation it was ordered to distribute to its stockholders the stock held by it in its subsidiary companies. In March, 1912, an agreement under seal prepared as disclosed by its recital by the trustees for the purpose of exempting them from any liability for a failure to dispose of the stocks of said subsidiary companies as well as to avoid the then perplexing question of apportionment of stock dividends, provided: "Now, in consideration of the premises and of the undertaking of the trustees not to sell the said stocks prior to the receipt or declaration, as the case may be, of the stock dividends now declared or about to be declared, nor earlier than in the exercise of their sound discretion the trustees shall deem for the benefit of the principal of the trust in question, the undersigned, each for himself and in respect of all his present and future right under any one or more of the provisions of the will and codicils of * * * deceased, hereby requests the trustees to continue in the said several trusts the stocks above mentioned until, in the exercise of their sound discretion, they shall deem a sale thereof for the benefit of the principal of the trust in question, and hereby waives and releases any and all right to have any and all stock dividends heretofore or hereafter declared upon stock of the Standard Oil Company (of New Jersey) or of any of the said subsidiary companies deemed income, and requests that the same is deemed and taken to be principal of the trust in each case in question. In consideration of the foregoing the trustees aforesaid undertake not to sell any of the said stocks until, in the exercise of their discretion, they shall deem a sale for the benefit of the principal of a trust for which the same shall be held, and until such a sale to credit any such stock dividends to the principal of the trust fund in question." This agreement was signed by the trustees, by all the life tenants and by such of the remaindermen as were of full age. Upon the accounting of the trustees, *held*:

That the trustees were in duty bound to retain the stock in the subsidiary companies until in the exercise of prudence it appeared advisable to dispose of it for the benefit of the trust funds, and their promise so to do was not a sufficient consideration to support a contract.

That said agreement was not enforcible as a contract between the remaindermen and the life tenants because it was not signed by all the remaindermen and, further, that no contract between them and the life tenants could bind the trustees in the management of the trust funds.

That as the trustees did not agree to do anything except what the law compelled them to do there was no consideration for the promise of the life tenants to waive their right to their proportionate share of the extraordinary dividends declared upon the stock of the subsidiary companies and the alleged contract was not enforcible against them by the trustees.

That said agreement was not enforcible by the remaindermen as a contract made between the trustees and the life tenants for the benefit of the remaindermen because the want of consideration for the promise of the life tenants rendered said agreement unilateral and unenforcible.

That if said agreement could be construed as an assignment or transfer by the life tenants of their right to a part of the income of the trust funds which had not accrued at the date of the instrument, it would be invalid under section 15 of the Personal Property Law.

That said agreement did not prevent the life tenants from demanding that the trustees pay to them their share of the extraordinary dividends declared upon the stock of the subsidiary companies of said corporation which constitute a part of the trust fund and that the trustees upon the present accounting should apportion such dividends between the principal and income in accordance with the rule enunciated in Matter of Osborne (209 N. Y. 450).

PROCEEDING upon the accounting of trustees.

Spooner & Cotton, for petitioners.

A. Perry Osborn, special guardian for Francis C. Bishop.

Cary & Carroll (Guy Cary and Arthur C. Blagden, of counsel), for Heber R. Bishop et al.

Daniel J. Mooney, special guardian.

Shattuck, Glenn, Huse and Ganter (Garrard Glenn, of counsel), for James C. Bishop.

Daniel L. Cady, for Harriet B. Arnold.

Fowler, S.— The trustees of the trust fund created by the will of the decedent have filed a voluntary account of their proceedings as such trustees, and the *cesluis que trustent* have filed objections thereto. The objections relate to the failure of the trustees to apportion between the life tenants and the remaindermen certain extraordinary dividends declared upon the stock of corporations which constitutes part of the trust fund. The rule enunciated by the Court of Appeals in Matter of Osborne (209 N. Y. 450), would have enabled the trustees to properly apportion the extraordinary dividends between the life tenants and the remaindermen were it not for a certain instrument executed on the 3d of March, 1912, by the trustees, the life tenants and some of the remaindermen, which, in the opinion of the trustees, renders it doubtful whether the life beneficiaries are entitled on this accounting to any part of these extraordinary dividends. The trustees, therefore, have submitted to the court for determination the question of the validity and effect of that instrument. I entertain no doubt of the jurisdiction of the court to determine upon this accounting the respective rights of the life tenants and remaindermen and the validity and effect of the instrument above referred to. (Code Civ. Pro., §§ 2510, 2731.)

The decedent gave his residuary estate to trustees and directed them to divide it into eight shares, and to hold one of such shares for the benefit of each of his eight children during the term of his or her natural life, and to pay the net income of such share to the child for whom it was set apart, quarterly, and after the death of each child the share held in trust for him or her to be paid to his or her issue surviving. There were other provisions providing for the disposition of the property in certain contingencies, but they are not material to the questions raised by the objections to the account.

The executors were authorized to retain the securities which the decedent owned at the time of his death, and to continue such investments for such time as they considered advisable, and to invest the trust funds in such bonds and railroad securities as they deemed safe or desirable. They were given discretionary power of sale and investment of the securities constituting the trust fund, and were not limited to the securities prescribed by law for the investment of such funds.

The executors accounted as such in December, 1908, and at that time paid over to themselves as trustees the residuary estate of the decedent. Part of the trust fund thus paid over consisted of 1,598 shares of stock of the Standard Oil Company of New Jersey, and these shares of stock were equally divided among the eight trust funds created for the eight children of the decedent. Subsequently to the creation of these trust funds the Standard Oil Company of New Jersey was dissolved by a decree of the Circuit Court of the United States, and was ordered to distribute to its stockholders the stock held by it in its subsidiary companies.

On March 3, 1912, the trustees prepared an instrument entitled " Request and consent of life tenants under will of Heber R. Bishop to continue holdings of stock in subsidiary Standard Oil Companies." The preliminary recitals in this instrument state, among other things, that the trustees hold as part of the trust fund a certain number of shares of the Standard Oil Company of New Jersey; that under a decision of the United States Circuit Court the Standard Oil Company of New Jersey was directed to distribute to its stockholders the stock of its subsidiary companies; that some of the subsidiary companies had, since the said distribution, declared, or were about to declare, dividends on their own stock; that it had been the intention of the trustees to sell the stock of the subsidiary companies declaring or likely to declare stock dividends in order to retain the value thereof for the remaindermen interested; that the life

tenants desired that the stocks in the subsidiary companies should not be sold at present, and that the remaindermen who were of age desired that the stocks should continue to be held by the trustees.    After these recitals the instrument reads:

"Now, in consideration of the premises and of the undertaking of the trustees not to sell the said stocks prior to the receipt or declaration, as the case may be, of the stock dividends now declared or about to be declared, nor earlier than in the exercise of their sound discretion the trustees shall deem for the benefit of the principal of the trust in question, the undersigned, each for himself and in respect of all his present and future right under any one or more of the provisions of the will and codicils of Heber R. Bishop, deceased, hereby requests the trustees to continue in the said several trusts the stocks above mentioned until, in the exercise of their sound discretion, they shall deem a sale thereof for the benefit of the principal of the trust in question, and hereby waives and releases any and all right to have any and all stock dividends heretofore or hereafter declared upon stock of the Standard Oil Company (of New Jersey) or of any of the said subsidiary companies deemed income, and requests that the same is deemed and taken to be principal of the trust in each case in question.

"In consideration of the foregoing the trustees aforesaid undertake not to sell any of the said stocks until, in the exercise of their discretion, they shall deem a sale for the benefit of the principal of a trust for which the same be held, and until such a sale to credit any such stock dividends to the principal of the trust fund in question."

This agreement was signed by the trustees, by all the life tenants and by the remaindermen who were of full age. Most of the remaindermen were infants and, therefore, did not join in the execution of the instrument.

The special guardian for the infant remaindermen contends that the effect of this instrument is to preclude the trustees

from paying to the life tenants that portion of the extraordinary dividends declared by the Standard Oil subsidiary companies to which they would be entitled under the decision of the Court of Appeals in Matter of Osborne (*supra*). This contention can only be sustained upon the theory that the instrument created a contract between the trustees and the life tenants, or between the trustees and the life tenants for the benefit of the remaindermen, or that it is evidence of a gift by the life tenants to the remaindermen of their interest in the extraordinary dividends.

It cannot be enforced as a contract between the remaindermen and the life tenants, because of the seventeen persons interested as remaindermen only five signed it. The instrument is under seal and cannot be enforced by those who were not a party to it. (Case v. Case, 203 N. Y. 263.) Besides, no contract could be entered into between the remaindermen and the life tenants which would bind the trustees in the management of the trust fund. The remaindermen could not compel the trustees to sell the stock of the subsidiary companies held for them as part of the trust fund, nor could they prevent the trustees from selling the stock whenever in their discretion they considered such sale advantageous to the trust. Therefore the remaindermen could not by any contract with the life tenants limit the rights granted to the trustees in the will, or extend their powers beyond those granted in that instrument. It, therefore, remains to be determined whether the instrument can be given effect as a contract between the trustees and the life tenants.

The promise of the trustees, which is the consideration for the waiver and release of the life tenants, is contained in the last paragraph of the instrument, wherein they undertake not to sell any of the stocks until, in the exercise of their discretion, they shall deem a sale for the benefit of the principal. But this is a duty imposed upon them by law. Trustees " are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and pru-

dence as in general prudent men of discretion and intelligence
in like matters employ in their own affairs." (Costello v.
Costello, 209 N. Y. 261.) Therefore the law imposed upon the
trustees the duty of retaining the stock in the subsidiary com-
panies of the Standard Oil Company until such time as, in the
exercise of prudence and intelligence, it appeared advisable to
dispose of them for the benefit of the trust fund. Their
promise to do so was merely a promise to perform a duty im-
posed upon them by law, and such a promise is not a sufficient
consideration to support a contract. (Robinson v. Jewett, 116
N. Y. 40; Vanderbilt v. Schreyer, 91 id. 392.) Therefore, as
the trustees did not agree to do anything except that which the
law would compel them to do, there was no consideration for the
promise of the life tenants to waive their right to their propor-
tionate share of the extraordinary dividends declared upon the
stock of the subsidiary companies, and the alleged contract is
not enforcible against them by the trustees. (Winslow v. Mayo,
123 App. Div. 758; affd., 195 N. Y. 551; Joseph v. Sulsberger,
136 App. Div. 499; Riker v. Comfort, 140 id. 117.)

Nor is it enforcible by the remaindermen as a contract made
between the trustees and the life tenants for the benefit of the
remaindermen, because the want of consideration for the
promise of the life tenants renders it unilateral and unenforci-
ble. (Joseph v. Sulsberger, *supra;* Rosseau v. Rouss, 180 N. Y.
122.)

If the instrument were construed as an assignment or transfer
by the life tenants of their right to a part of the income of the
trust fund which had not accrued at the date of the instrument,
it would be invalid under section 15 of the Personal Property
Law. But there are no words of assignment or transfer; there
are words merely of release and waiver, and these words are
not sufficient to constitute a transfer. (Central Trust Co. v.
Gaffney, 157 App. Div. 501.) Neither can the words of waiver
and release be construed so as to effect a valid gift to the re-

maindermen of that part of the extraordinary dividends which, under the decision of the Court of Appeals in Matter of Osborne (*supra*), would belong to the life tenants, as there are no words of direct gift and there has been no delivery to the donees of the subject matter of the gift. The life tenants could not make a gift of the income which had not accrued at the time of the execution of the instrument, because it would be an attempt to make a gift to take effect in possession *in futoro,* and such a gift is void. (Young v. Young, 80 N. Y. 422; Beaver v. Beaver, 170 id. 421; Gannon v. McGuire, 160 id. 476.)

The recitals in the instrument disclose that it was prepared by the trustees for the purpose of exempting them from any liability for a failure to dispose of the stocks of the subsidiary companies of the Standard Oil Company, as well as to avoid the then perplexing question of apportionment of stock dividends. These recitals show that there was some doubt in the minds of the trustees as to their right to hold these stocks in the unsettled condition of the market caused by the dissolution of the Standard Oil Company, and that there was some uncertainty as to the correct method of apportionment between life tenants and remaindermen of the extraordinary dividends declared on such stocks, and that they were therefore desirous of relieving themselves from any liability for failure to sell the stocks or for the adoption of an incorrect method of apportioning the dividends. The instrument prepared by them and executed by them and the life tenants might be of some effect in a proceeding in which the life tenants would seek to hold the trustees liable for any damage sustained because of their failure to sell the stocks in the subsidiary companies; but no attempt is made in this proceeding to hold the trustees liable for any act in their capacity as trustees. It is not contended by either the life tenants or the remaindermen that the trustees in refraining from selling the stock of the subsidiary companies before the declaration of the extraordinary dividends have violated their

duty as trustees. The question is merely whether upon this accounting the trustees should apportion the extraordinary dividends between the life tenants and the remaindermen in accordance with the decision of the Court of Appeals in Matter of Osborne (*supra*), or whether, by virtue of the instrument above referred to, such extraordinary dividends should be credited to the principal of the trust. These dividends are held by the trustees in kind, and have not been distributed or apportioned between the life tenants and remaindermen.

The life tenants are entitled to their share of the extraordinary dividends unless the instrument above referred to estops them from claiming such share. They have revoked that instrument. It could not act as an estoppel, because the life tenants have not received anything under it as a consideration for executing the instrument, and its terms have not been complied with. The trustees have not been prejudiced, because there is no contention that their failure to sell the stocks is a violation of their duty, and the remaindermen parted with no valuable consideration for the release and waiver of the life tenants, therefore the latter are not estopped from revoking the instrument or claiming that part of the extraordinary dividends to which they are entitled under the decision of the Court of Appeals in Matter of Osboren (*supra*).

I will therefore hold that the instrument does not prevent the life tenants from demanding that the trustees pay to them their share of the extraordinary dividends declared upon the stock of the subsidiary companies of the Standard Oil Company of New Jersey which constitute a part of the trust fund, and that upon this accounting the trustees shall apportion such dividends between the principal and income in accordandce with the rule enunciated by the Court of Appeals in Matter of Osborne (*supra*). As the papers upon the accounting do not contain sufficient facts to enable the court to make this apportionment, I will appoint a referee to make this calculation, unless the

parties within ten days from the publication of this decision agree upon the figures upon which the apportionment may be made.

Decreed accordingly.

———————

Matter of the Petition of Samuel M. Meeker to Render and Settle his Account as Successor Trustee under the Last Will and Testament of Helena Covert, Deceased.

(*Surrogate's Court, Kings County, February, 1915.*)

Wills—Provisions of Will for Division of Testator's Estate Into Seven Equal Parts—Trusts—When Grandchildren Excluded.

A will, after providing for the division of the residue of testator's estate into seven equal parts, the gift outright to three persons therein named and a devise in trust of the four remaining parts for purposes separately stated with respect to each share, continued: "Upon the further trust to designate and set apart the remaining equal part or share for the use of my son * * * to receive the rents, income and profits thereof, and apply the same to his use during his natural life, and at his death to pay, divide and distribute the capital of such last mentioned share to and among his lawful issue equally." Said son died leaving three children now surviving two of whom have each a child. *Held*, that the decree entered upon the judicial settlement of the account of the trustee should provide for the division of the fund once held for the benefit of testator's deceased son among his three children to the exclusion of the grandchildren.

Proceedings upon the settlement of the account of a sucessor trustee.

John C. Loud, for accountant.

William F. Ryan, for John Covert, a legatee.

Joseph A. Keenan, special guardian for Muriel R. Covert and Audrey D. Covert, infants.