and relaid." But, being outside of the excavation, which was to be one foot wider than the external width of the sewer, such pavement was virtually an extra. Hence there is no inference that this 90 yards was intended to cover all the pavement over the sewer and within the lines of the trenches which plaintiff was to relay. Clause TT of the contract clearly provided for the city's charge for inspecting the backfilling.

The further provision that the amount of such deposits was to be based on the measured area of the surface to be repaved at different rates figured upon the different sorts of pavement, also indicated a deposit to cover the cost of relaying the pavements which, under the permits, the plaintiff was allowed to take up. In face of these terms, so explicitly set forth, we cannot hold that the deposits were only to secure the city for loss or damage to paving material or for broken curbstone. This sewer contract, read with the ordinance of 1903, was for the entire job, not only the pipe set in the trenches and covered over, but the important and final work of putting down again the paved street surface. That for this the city took cash deposits made it none the less obligatory upon the contractor. Experience shows that final repaving has to be deferred to allow time for the fill to subside, also that the borough highway bureau, and not the contractor, is better fitted to restore the street. A like claim for return of deposits for permits made by a Richmond county sewer contractor was rejected by the trial court, whose adverse judgment was affirmed in the first department. Merrill-Ruckgaber Co. v. City of New York, 160 App. Div. 513, 145 N. Y. Supp. 577.

The judgment dismissing the complaint is therefore affirmed, with costs.

---

### In re BISHOP'S ESTATE.

(Surrogate's Court, New York County. February 10, 1915.)

1. TRUSTS (§ 298*)—JURISDICTION—SURROGATE'S COURT.

Under Code Civ. Proc. § 2510, defining the general jurisdiction of the surrogate's court, and section 2731, providing for an accounting by trustees, etc., the surrogate's court, upon trustees' accounting, had jurisdiction to determine the respective rights of the life tenants and remaindermen, and the validity and effect of an instrument entered into by the life beneficiaries, the adult remaindermen, and the trustees.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 417; Dec. Dig. § 298.*]

2. TRUSTS (§ 270*)—MANAGEMENT—DISCRETION.

Trustees are bound in the management of all the matters of the trust to act in good faith, and employ such vigilance, sagacity, diligence, and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 379; Dec. Dig. § 270.*]

3. TRUSTS (§ 283*)—MANAGEMENT—AGREEMENT BETWEEN TRUSTEES, LIFE TENANTS, AND REMAINDERMEN—VALIDITY.

Decedent gave his residuary estate to trustees, to be divided into shares, one of which was to be held for the benefit of each of his children

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for life, the net income therefrom to be paid to each beneficiary quarterly, with remainder to the surviving issue of each beneficiary, and authorized the trustees to retain the securities owned at his death, and to continue such investment as they deemed advisable, and to invest the trust funds in such bonds and securities as they deemed safe or desirable, and upon the dissolution of a company whose stock constituted part of the trust fund, and in anticipation of its distribution to stockholders of the stock held by it in its subsidiary companies, the life tenants, the adult remaindermen, and the trustees executed an instrument reciting such expected distribution, and requesting that the stock in the subsidiary companies should not be then sold, and in consideration thereof, and the waiver and release of any right to have the dividend deemed income, the trustees undertook not to sell the stock before the dividend or distribution was declared, nor until they should deem it for the benefit of the trust, and to credit any dividends to the principal. *Held,* that the instrument was not enforceable as a contract with the life tenants limiting or extending the rights of the trustees under the will.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 403, 404; Dec. Dig. § 283.*]

4. CONTRACTS (§ 186*)—PARTIES—CONTRACTS UNDER SEAL.

Such instrument, being under seal, could not be enforced as a contract between the remaindermen and the life tenants, since the infant remaindermen were not parties thereto.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 790–797; Dec. Dig. § 186.*]

5. TRUSTS (§ 210*) — MANAGEMENT — AGREEMENT BETWEEN TRUSTEES, LIFE TENANTS, AND REMAINDERMEN—VALIDITY—CONSIDERATION.

Such instrument was not effective as a contract between the trustees and the life tenants, since the promise of the trustees, in consideration for the life tenants' waiver and release of their rights to income, that they would not sell any of the stock until they deemed the sale to be for the benefit of the principal was only an undertaking to perform a duty imposed upon them by law, and not a sufficient consideration to support the contract; nor was it enforceable by the remaindermen as a contract between the trustees and the life tenants for their benefit, because the want of consideration for the waiver and release by the life tenants rendered it unilateral and unenforceable.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 297, 299, 300; Dec. Dig. § 210.*]

6. LIFE ESTATES (§ 26*)—CONTRACTS—ASSIGNMENT AND TRANSFER.

The words of release and waiver of the life tenants' rights to dividends as income, and allowing them to remain part of the principal, were not sufficient to constitute a transfer of the income to the remaindermen.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 48; Dec. Dig. § 26.*]

7. GIFTS (§ 18*)—AGREEMENT—CONSTRUCTION.

Nor could the waiver and release by the life tenants of their right to the income of the trust fund be construed to effect a valid gift to the remaindermen of that part of the dividends accruing to stock forming part of the trust fund, since there were no words of direct gift and there was no delivery of the subject-matter.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 29–33; Dec. Dig. § 18.*]

8. GIFTS (§ 11*)—VALIDITY—GIFT IN FUTURO.

Such agreement could not be construed, as a gift by the life tenants, since they could not make a gift of income which had not accrued to the trust fund when the instrument was executed, as an attempt to make a gift to take effect in possession in futuro is void.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. § 9; Dec. Dig. § 11.*]

9. LIFE ESTATES (§ 26*)—INCOME AND DIVIDENDS—AGREEMENT—ESTOPPEL.

Such instrument could not estop the life tenants from claiming their share of the dividend because they had not received anything under it as a consideration for the executory contract, since the trustees were not prejudiced, where there was no charge that their failure to sell the stocks was a violation of their duty, and since the remaindermen parted with no valuable consideration for the release and waiver by the life tenants.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. § 48; Dec. Dig. § 26.*]

10. TRUSTS (§ 272*)—INCOME—DIVIDEND ON STOCK—APPORTIONMENT.

Extraordinary dividends on stock held in trust belonged to the life beneficiaries, unless they intrench upon the capital of the trust fund as received from the creator of the trust or invested in the stock, in which case they should be returned to the trust fund, or apportioned between the life beneficiary and the fund, so as to preserve its integrity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 383–385; Dec. Dig. § 272.*]

In the matter of objections of the cestuis que trustent to a voluntary account filed by trustees of a trust fund created by the will of Heber R. Bishop, deceased. Instrument executed by parties construed, and referee to be appointed.

Spooner & Cotton, of New York City, for petitioners.

A. Perry Osborn, of New York City, special guardian, for Francis C. Bishop.

Cary & Carroll, of York City (Guy Cary and Arthur C. Blagden, both of New York City, of counsel), for Heber R. Bishop and others.

Daniel J. Mooney, of New York City, special guardian.

Shattuck, Glenn, Huse & Ganter, of New York City (Garrard Glenn, of New York City, of counsel), for James C. Bishop.

Daniel L. Cady, of New York City, for Harriet B. Arnold.

FOWLER, S. The trustees of the trust fund created by the will of the decedent have filed a voluntary account of their proceedings as such trustees, and the cestuis que trustent have filed objections thereto. The objections relate to the failure of the trustees to apportion between the life tenants and the remaindermen certain extraordinary dividends declared upon the stock of corporations which constitutes part of the trust fund. The rule enunciated by the Court of Appeals in the Matter of Osborne, 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A. (N. S.) 510, would have enabled the trustees to properly apportion the extraordinary dividends between the life tenants and the remaindermen, were it not for a certain instrument executed on the 3d of March, 1912, by the trustees, the life tenants, and some of the remaindermen, which, in the opinion of the trustees, renders it doubtful whether the life beneficiaries are entitled on this accounting to any part of these extraordinary dividends. The trustees, therefore, have submitted to the court for determination the question of the validity and effect of that instrument.

[1] I entertain no doubt of the jurisdiction of the court to determine upon this accounting the respective rights of the life tenants and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remaindermen and the validity and effect of the instrument above referred to.   Sections 2510 and 2731, C. C. P.

[2-5] The decedent gave his residuary estate to trustees, and directed them to divide it into eight shares, and to hold one of such shares for the benefit of each of his eight children during the term of his or her natural life, and to pay the net income of such share to the child for whom it was set apart, quarterly, and after the death of each child the share held in trust for him or her to be paid to his or her issue surviving.   There were other provisions providing for the disposition of the property in certain contingencies, but they are not material to the questions raised by the objections to the account.

The executors were authorized to retain the securities which the decedent owned at the time of his death, and to continue such investments for such time as they considered advisable, and to invest the trust funds in such bonds and railroad securities as they deemed safe or desirable.   They were given discretionary power of sale and investment of the securities constituting the trust fund, and were not limited to the securities prescribed by law for the investment of such funds.

The executors accounted as such in December, 1908, and at that time paid over to themselves as trustees the residuary estate of the decedent.   Part of the trust fund thus paid over consisted of 1,598 shares of stock of the Standard Oil Company of New Jersey, and these shares of stock were equally divided among the eight trust funds created for the eight children of the decedent.   Subsequently to the creation of these trust funds the Standard Oil Company of New Jersey was dissolved by a decree of the Circuit Court of the United States, and was ordered to distribute to its stockholders the stock held by it in its subsidiary companies.

On March 3, 1912, the trustees prepared an instrument entitled "Request and Consent of Life Tenants under Will of Heber R. Bishop to Continue Holdings of Stock in Subsidiary Standard Oil Companies."   The preliminary recitals in this instrument state, among other things, that the trustees hold as part of the trust fund a certain number of shares of the Standard Oil Company of New Jersey; that under a decision of the United States Circuit Court the Standard Oil Company of New Jersey was directed to distribute to its stockholders the stock of its subsidiary companies; that some of the subsidiary companies had, since the said distribution, declared, or were about to declare, dividends on their own stock; that it had been the intention of the trustees to sell the stock of the subsidiary companies declaring or likely to declare stock dividends, in order to retain the value thereof for the remaindermen interested; that the life tenants desired that the stocks in the subsidiary companies should not be sold at present; and that the remaindermen who were of age desired that the stocks should continue to be held by the trustees.   After these recitals the instrument reads:

"Now, in consideration of the premises and of the undertaking of the trustees not to sell the said stocks prior to the receipt or declaration, as the case may be, of the stock dividends now declared or about to be declared, nor

earlier than in the exercise of their sound discretion the trustees shall deem for the benefit of the principal of the trust in question, the undersigned, each for himself and in respect of all his present and future right under any one or more of the provisions of the will and codicils of Heber R. Bishop, deceased, hereby requests the trustees to continue in the said several trusts the stocks above mentioned until, in the exercise of their sound discretion, they shall deem a sale thereof for the benefit of the principal of the trust in question, and hereby waives and releases any and all right to have any and all stock dividends heretofore or hereafter declared upon stock of the Standard Oil Company (of New Jersey) or of any of the said subsidiary companies deemed income, and requests that the same be deemed and taken to be principal of the trust in each case in question.

"In consideration of the foregoing the trustees aforesaid undertake not to sell any of the said stocks until, in the exercise of their discretion, they shall deem a sale for the benefit of the principal of a trust for which the same shall be held, and until such a sale to credit any such stock dividends to the principal of the trust fund in question."

This agreement was signed by the trustees, by all the life tenants, and by the remaindermen who were of full age. Most of the remaindermen were infants, and therefore did not join in the execution of the instrument.

The special guardian for the infant remaindermen contends that the effect of this instrument is to preclude the trustees from paying to the life tenants that portion of the extraordinary dividends declared by the Standard Oil subsidiary companies to which they would be entitled under the decision of the Court of Appeals in the Matter of Osborne, supra. This contention can only be sustained upon the theory that the instrument created a contract between the trustees and the life tenants, or between the trustees and the life tenants for the benefit of the remaindermen, or that it is evidence of a gift by the life tenants to the remaindermen of their interest in the extraordinary dividends.

It cannot be enforced as a contract between the remaindermen and the life tenants, because of the seventeen persons interested as remaindermen only five signed it. The instrument is under seal and cannot be enforced by those who were not a party to it. Case v. Case, 203 N. Y. 263, 96 N. E. 440, Ann. Cas. 1913B, 311. Besides, no contract could be entered into between the remaindermen and the life tenants which would bind the trustees in the management of the trust fund. The remaindermen could not compel the trustees to sell the stock of the subsidiary companies held for them as part of the trust fund, nor could they prevent the trustees from selling the stock whenever in their discretion they considered such sale advantageous to the trust. Therefore the remaindermen could not by any contract with the life tenants limit the rights granted to the trustees in the will, or extend their powers beyond those granted in that instrument. It therefore remains to be determined whether the instrument can be given effect as a contract between the trustees and the life tenants.

The promise of the trustees, which is the consideration for the waiver and release of the life tenants, is contained in the last paragraph of the instrument, wherein they undertake not to sell any of the stocks until, in the exercise of their discretion, they shall deem a sale for the benefit of the principal. But this is a duty imposed upon them by law. Trustees "are bound in the management of all the mat-

ters of the trust to act in good faith, and employ such vigilance, sagacity, diligence, and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs." Costello v. Costello, 209 N. Y. 261, 103 N. E. 152. Therefore the law imposed upon the trustees the duty of retaining the stock in the subsidiary companies of the Standard Oil Company until such time as, in the exercise of prudence and intelligence, it appeared advisable to dispose of them for the benefit of the trust fund. Their promise to do so was merely a promise to perform a duty imposed upon them by law, and such a promise is not a sufficient consideration to support a contract. Robinson v. Jewett, 116 N. Y. 40, 22 N. E. 224; Vanderbilt v. Schreyer, 91 N. Y. 392. Therefore, as the trustees did not agree to do anything except that which the law would compel them to do, there was no consideration for the promise of the life tenants to waive their right to their proportionate share of the extraordinary dividends declared upon the stock of the subsidiary companies, and the alleged contract is not enforceable against them by the trustees. Winslow v. Mayo, 123 App. Div. 758, 108 N. Y. Supp. 640, affirmed 195 N. Y. 551, 88 N. E. 1135; Joseph v. Sulzberger, 136 App. Div., 499, 121 N. Y. Supp. 73; Riker v. Comfort, 140 App. Div. 117, 124 N. Y. Supp. 1106.

Nor is it enforceable by the remaindermen as a contract made between the trustees and the life tenants for the benefit of the remaindermen, because the want of consideration for the promise of the life tenants renders it unilateral and unenforceable. Joseph v. Sulzberger, supra; Rosseau v. Rouss, 180 N. Y. 122, 72 N. E. 916.

[6] If the instrument were construed as an assignment or transfer by the life tenants of their right to a part of the income of the trust fund which had not accrued at the date of the instrument, it would be invalid under section 15 of the Personal Property Law (Consol. Laws, c. 41). But there are no words of assignment or transfer; there are words merely of release and waiver, and these words are not sufficient to constitute a transfer. Central Trust Co. v. Gaffney, 157 App. Div. 501, 142 N. Y. Supp. 902.

[7, 8] Neither can the words of waiver and release be construed so as to effect a valid gift to the remaindermen of that part of the extraordinary dividends which, under the decision of the Court of Appeals in the Matter of Osborne, supra, would belong to the life tenants, as there are no words of direct gift and there has been no delivery to the donees of the subject-matter of the gift. The life tenants could not make a gift of the income which had not accrued at the time of the execution of the instrument, because it would be an attempt to make a gift to take effect in possession in futuro, and such a gift is void. Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Gannon v. McGuire, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694.

The recitals in the instrument disclose that it was prepared by the trustees for the purpose of exempting them from any liability for a

failure to dispose of the stocks of the subsidiary companies of the Standard Oil Company, as well as to avoid the then perplexing question of apportionment of stock dividends. These recitals show that there was some doubt in the minds of the trustees as to their right to hold these stocks in the unsettled condition of the market caused by the dissolution of the Standard Oil Company, and that there was some uncertainty as to the correct method of apportionment between life tenants and remaindermen of the extraordinary dividends declared on such stocks, and that they were therefore desirous of relieving themselves from any liability for failure to sell the stocks or for the adoption of an incorrect method of apportioning the dividends. The instrument prepared by them and executed by them and the life tenants might be of some effect in a proceeding in which the life tenants would seek to hold the trustees liable for any damage sustained because of their failure to sell the stocks in the subsidiary companies; but no attempt is made in this proceeding to hold the trustees liable for any act in their capacity as trustees.

It is not contended by either the life tenants or the remaindermen that the trustees in refraining from selling the stock of the subsidiary companies before the declaration of the extraordinary dividends have violated their duty as trustees. The question is merely whether upon this accounting the trustees should apportion the extraordinary dividends between the life tenants and the remaindermen in accordance with the decision of the Court of Appeals in the Matter of Osborne, supra, or whether, by virtue of the instrument above referred to, such extraordinary dividends should be credited to the principal of the trust. These dividends are held by the trustees in kind, and have not been distributed or apportioned between the life tenants and remaindermen.

[9] The life tenants are entitled to their share of the extraordinary dividends unless the instrument above referred to estops them from claiming such share. They have revoked that instrument. It could not act as an estoppel, because the life tenants have not received anything under it as a consideration for executing the instrument, and its terms have not been complied with. The trustees have not been prejudiced, because there is no contention that their failure to sell the stocks is a violation of their duty, and the remaindermen parted with no valuable consideration for the release and waiver of the life tenants; therefore the latter are not estopped from revoking the instrument or claiming that part of the extraordinary dividends to which they are entitled under the decision of the Court of Appeals in the Matter of Osborne, supra.

[10] I will therefore hold that the instrument does not prevent the life tenants from demanding that the trustees pay to them their share of the extraordinary dividends declared upon the stock of the subsidiary companies of the Standard Oil Company of New Jersey which constitute a part of the trust fund, and that upon this accounting the trustees shall apportion such dividends between principal and income in accordance with the rule enunciated by the Court of Appeals in

the Matter of Osborne, supra. As the papers upon the accounting do not contain sufficient facts to enable the court to make this apportionment, I will appoint a referee to make this calculation, unless the parties within ten days from the publication of this decision agree upon the figures upon which the apportionment may be made.